Roy IRBY, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 19988.

United States Court of Appeals
District of Columbia Circuit.

Reargued June 28, 1967.

Decided Nov. 17, 1967.

Mr. William L. Slover, Washington, D. C. (appointed by the District Court), for appellant.

Mr. Charles A. Mays, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Earl J. Silbert, Asst. U. S. Attys., were on the brief, for appellee.

Mr. Howard P. Willens, Washington, D. C., argued as amicus curiæ.

ON REHEARING EN BANC

Before BAZELON, Chief Judge, and DANAHER, BURGER, WRIGHT, McGOWAN, TAMM and LEVENTHAL, Circuit Judges, sitting *en banc.*

McGOWAN, Circuit Judge, with whom Circuit Judges DANAHER, BURGER, and TAMM join:

In 1958 appellant, represented by counsel, pleaded guilty to the housebreaking and robbery counts of a 9-count indictment, and received consecutive sentences of two to eight years on the one, and four to twelve years on the other. The other counts were then dismissed. In 1965 he moved under 28 U.S.C. § 2255 to regain his liberty on the ground that the

two sentences could not validly have been made to run consecutively. The District Court denied the motion in a long opinion which explored with care the single legal issue raised by the motion. 250 F. Supp. 983 (1965). Upon appeal, a panel of this court reversed, one judge dissenting (No. 19,988, decided March 15, 1967). The Government's petition for rehearing *en banc* was granted; and, after rehearing, the District Court's judgment is herewith affirmed.

## I

Because of the existence of District Judge (now Circuit Judge) Robinson's opinion referred to above, there is no occasion for us to cover the same ground in reaching the same result. He recognized, as this court has recently had occasion to do, that there are circumstances where it cannot safely be assumed that simply because the legislature has defined two separate crimes with differing elements and prescribed separate punishments for them, it contemplated that such punishments can be consecutively inflicted.[1] The nature of the two criminal specifications, and of the course of conduct in which both crimes may be thought to have been committed, may be such as to raise a doubt as to a legislative purpose to encompass both punishments. In such a case, an aid to the divination of such purpose in the form of a so-called "rule of lenity" has been devised to the end of barring double punishment where there is substantial doubt as to whether Congress would have intended it to be imposed.

A majority of the panel which first heard this appeal thought that there was a sufficiently "substantial doubt about what Congress intended" as to

cause the rule of lenity to operate. This point of view was conscientiously and competently urged upon us by appellant's appointed counsel, who has served his client faithfully and well here as in the District Court. However, we agree with the District Court that the degree of doubt discernible on this record does not warrant invocation of the rule of lenity. We note in this regard the District Court's analysis of the historic differences in concept between housebreaking as a crime against property, on the one hand, and robbery as a crime against the person, on the other.

It is not novel that Congress has differentiated between housebreaking and robbery in terms of the one as an invasion of the security of the dwelling, and the other as an intrusion upon the security of the person. This was a distinction familiar to the common law, and it was perpetuated in the statutes found to have been violated here. Stealing something worth $1000 may be only an aggravation of the misdeed involved in stealing something worth $10. But taking something, whatever its worth, from another's person by force and putting in fear brings in a new and different interest which it has been thought important to protect, namely, the person threatened as distinct from the property taken.

One who wrongfully goes into a house to pilfer what he can find may or may not start out with a purpose to rob, if necessary. If he consciously entertains both purposes from the beginning, it can be said that he sets out with an intent to commit both larceny and robbery, or crimes against both property and person, if the opportunity presents itself. In such circumstances, he will be guilty of housebreaking in either event once he

---

1. Ingram v. United States, 122 U.S.App.D. C. 334, 353 F.2d 872 (1965); Davenport v. United States, 122 U.S.App.D.C. 344, 353 F.2d 882 (1965). These cases involved a single act directed against a single interest, i.e., violent assault upon the person of another. We held consecutive sentences to be improper because of the doubt created under these circumstances as to whether Congress would have intended double punishments to be imposed. The doubt is much less pronounced in a case like the one before us where two discrete protected interests are involved, and where the course of conduct, although perhaps continuous in its flow, nevertheless affords an opportunity for discrimination by the actor between such interests before both are infringed.

crosses the threshold, but, if he retires upon finding the house occupied and without robbing the occupant, he has made the decision which saves him from punishment for robbery. The point is, of course, that his invasion of the premises to steal does not irrevocably commit him to rob from the person of anyone he finds there. The choice is still his up to the moment of confrontation.[2] If he decided to rob, consecutive punishments are not made available solely as a means of exacting greater retribution. Congress could well have conceived of them as a deterrent to compromising the safety of the person as well as the security of the premises. They illuminate the differing dangers to society inherent in stealing what one finds in a vacant house, and robbing the occupant as well when he proves to be at home. We cannot, at any rate, say with confidence that Congress did not contemplate some additional disincentive for the latter.[3]

## II

The problems in this area are not easy. It was for this reason that the court *en banc* decided to seek the views of a disinterested *amicus curiæ*. There has been forthcoming, as a result of this appointment, a very helpful brief which has supplied us with useful research information,[4] as well as with imaginative re-

2. We do not think that the indictment can be characterized as asserting that appellant's course of conduct was motivated by a single criminal intent. In the housebreaking count, he was charged with entering a dwelling "with intent to steal property of another." In the robbery count, he was charged with taking two rings from the person and from the immediate possession of a named complainant "by force and violence and against resistance and by sudden and stealthy seizure and snatching and by putting in fear." The two are not the same, and they are fully consistent with either concurrent or consecutive criminal purposes of a different order. The Supreme Court has, of course, been alert to prohibit double punishment for the commission of a federally-created crime and for the attempt to do so. See Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957).

3. The drafters of the American Law Institute's Model Penal Code were explicitly conscious of the unfairness involved in the imposition of "cumulative penalties * * for entering with intent to steal and for stealing, although ordinarily attempt merges in the completed offense." Although proposing a burglary offense not essentially unlike our housebreaking statute, they added a ban on duplicate penalties in these terms:

> *Multiple Convictions.* A person may not be convicted both for burglary and for the offense which it was his purpose to commit after the burglarious entry or for an attempt to commit that offense, unless the additional offense constitutes a felony of the first or second degree.

They went on, however, to define robbery in a manner similar to our robbery statute, and made it a felony of the second degree. See Model Penal Code (Proposed Official Draft) § 221.1 incorporating Commentary of Tentative Draft No. 11, at 56, 61.

4. *Amicus* has discussed at length the law as to consecutive sentencing in certain states, notably California and Illinois. The former has had, for nearly a century, a statutory ban on double punishments for "an act or omission which is made punishable in different ways by different provisions" of the Code. Directly indicative in itself of a legislative purpose in the matter of consecutive sentences, the statute has nevertheless had a checkered career of judicial interpretation, culminating in a rule to the effect that whether an act is single or not is to be derived from the intent and objective of the actor Neal v. State, 55 Cal.2d 11, 9 Cal.Rptr. 607, 357 P.2d 839 (1960). It was held in that case that one who threw gasoline into the bedroom of a sleeping couple for the purpose of killing them could not be punished for both attempted murder and arson. We suggest that, on the facts, this ruling is not unlike our holdings in *Davenport* and *Ingram*, Note 1, *supra;* and we recognize that, as *Neal* suggests, there is no utter conclusiveness to a technical distinction between crimes against property and person, respectively. Illinois also has a statutory limitation of consecutive sentences, although it appears to have followed, rather than preceded, judicial development. The case which that statute is reputed to have codified invalidated consecutive sentences for assault with intent to rape and assault with intent to murder, People v. Stingley, 414 Ill. 398, 111 N.E.2d 548, *cert. denied*, 345 U.S. 959, 73 S.Ct. 945, 97 L.Ed. 1379 (1959); and again we suggest that this holding is

flections upon the judicial approach most cognizant of both the public and private interests involved.

*Amicus* has concluded that the rule of lenity has a very limited utility indeed as a touchstone of the propriety of consecutive sentences. He suggests that it be abandoned in favor of a supervisory rule to the effect that consecutive sentences may not be imposed for offenses arising out of a single course of conduct unless the sentencing judge (1) finds from the facts that the defendant was not motivated by a single intent and objective, and (2) recites his reasons for believing that consecutive sentences are necessary to achieve at least one of the recognized sentencing goals.

■ Were this proposal to be deemed wholly meritorious, it could have no application to this case, for the reason that it would require a remand hearing to try to assemble and reconstruct facts which happened nearly a decade ago. The sentencing judge is dead; and it is a commonplace that the passage of even a few years makes it difficult to pursue factual inquiries. An attack on consecutive sentences is one which should be made at the time the sentences are imposed, when there is the opportunity to make a meaningful inquiry into the facts. It is not suited to the vehicle of belated collateral attack.

■ It is true that where, as here, consecutive sentencing was founded upon a guilty plea, the record is singularly uninformative in respect of those facts which would be most helpful in any appraisal of the Congressional will. Any judge contemplating consecutive sentences in such a situation hereafter would be well advised to cause the record to show

the factual circumstances surrounding the commission of the crimes. Such a practice would enable the judicial process to function better at all levels because it would facilitate the search for the legislative intent which primarily defines the limits of the sentencing power.

The judgment of the District Court is Affirmed.

LEVENTHAL, Circuit Judge (concurring):

I concur in the judgment, since I agree that it is possible that a combination at one scene of a housebreaking, with intent to commit larceny, and a robbery, may reflect sufficiently separate criminal purposes to permit consecutive punishment. While they may also, I think, be so integrated as to preclude consecutive punishment, that objection is one that should ordinarily be put forward when sentence is imposed, or timely in a motion to reduce the sentence. In any event, as will be indicated, I do not believe that appellant's pleading asserted the factual predicate necessary to sustain the conclusion that the "sentence was in excess of the maximum authorized by law."

A new approach, such as that suggested by amicus curiae,[1] is left by the court to future consideration, and that seems right to me. In exploring approaches and pondering consequences, we may be aided by the analyses generated by the tensions of the adversary system, and, if they are available, by reflections of a sentencing judge whose attention has been directed to the elements of the approach advanced for consideration.

arguably within the range of our decisions in *Davenport* and *Ingram*. The distinction between all those cases and this, at least on the facts as we have to assume them to be in this case, is that here the course of conduct admitted of interruption and alteration in response to the deterrent influence of additional punishment. That possibility is what disables us from seriously doubting that Congress, absent any explicit declaration of its intent, can be

taken to have disclaimed any such purpose to deter.

1. Amicus curiae recommended that this court remand for resentencing in accordance with new criteria which would, inter alia, condition consecutive punishments on a prerequisite finding that a sentence in excess of the maximum available for the most serious offense is necessary to achieve recognized sentencing goals.

Meanwhile I believe that it usually avails little to seek out specific legislative intent as to the particular offenses. Occasionally an ascertainable legislative objective concerning pyramiding of penalties may be discernible where Congress is addressing itself to a specific type of anti-social conduct. The Supreme Court has accordingly gleaned from the legislature's successive efforts to tighten the screw in narcotics offenses an intent to pyramid punishments,[2] and contrariwise in the laws punishing national bank robberies it has found that the alternative sections broaden the net available for catching up with criminal activity without cumulating punishment for a single episode.[3] But for the most part there is no ascertainable legislative intent on cumulation of punishment in relation to any particular offense or group of offenses even when the prohibiting statute is one passed by a national legislature in the exercise of its delegated powers. Legislative intent is even less ascertainable when the Congressional enactment does not relate to a specific crime, or even reflect the narrowing to a sphere of delegated powers, but is part of a code embracing the entire span of criminal activity, a general overhaul undertaken by Congress as a super-territorial legislature, acting in the same broad range as the various state and territorial legislatures.

In the absence of other, specific legislative intention on the side of either lenity or harshness, we can only invoke a generalized legislative intent. This is more likely presumed than real, and embodies a large standard of reasonableness and fairness to offenders and society alike. The standard that best conforms to my estimate of a generalized legislative intention is this: A defendant guilty of a serious crime is subject to judgment of imprisonment. The sentencing judge is given latitude so that a heavier punishment will be appropriate for a crime that is aggravated in its particular facts. When the same act can be classified as different crimes, he may be punished with the most onerous penalty provided for the most extreme crime for which he was charged. But he is not to be given two or more consecutive punishments for what is essentially a single criminal episode—say a robbery, committed of course with intent to rob—merely because the law would also have punished him if he had stopped or been apprehended before completing the robbery, on the ground that his acts and intent constitute either an attempt to commit robbery or a substantive crime which is made punishable because it is a preliminary step taken with that ultimate intent.[4]

This standard is essentially similar to that announced in the early 1900's, shortly after the adoption of the District of Columbia Code, by competent circuit courts of appeals.[5] Reference is particularly made to the reflective analysis in Judge Sanborn's opinion in Munson v. McClaughry, for his review of the division among the state courts and his adoption of what he considers to be the better-reasoned rule (198 F. at 74):[6]

[W]here one attempts to break into or breaks into a post office building

2. Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958).

3. Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957).

4. Of course if his housebreaking had a double objective and he, say, both raped and robbed the resident he could plainly be subject to consecutive punishment. If he completed the rape, and then fled before consummating the robbery, could he be sentenced consecutively for rape and for housebreaking with intent to commit robbery? My tentative view is yes, but

it is unnecessary to ponder all possible permutations and refinements which will remain for resolution no matter what basic approach is used.

5. Halligan v. Wayne, 179 F. 112 (9th Cir. 1910); Munson v. McClaughry, 198 F. 72 (8th Cir. 1912).

6. In concluding that Judge Sanborn's opinion sets forth the essence of the sound rule—subject to refinements and improvements (see note 1, above)—I am aware that his reasoning was rejected in Ebeling v. Morgan, 237 U.S. 625, 35 S.Ct. 710, 59

with intent to commit larceny therein, and at the same time commits the larceny, his criminal intent is one, and it inspires his entire transaction, which is itself in reality but a single continuing criminal act. It seems to be unauthorized, inhumane, and unreasonable to divide such a single intent and such a criminal act into two or more separate offenses, and to inflict separate punishments upon the various steps in the act or transaction, such as one for breaking, or for the attempt to break with the criminal intent, and another for a larceny with the same intent, or such as one for the attempt to break, a second for the breaking, a third for the entering, a fourth for the taking of stamps, a fifth for the taking of other property, a sixth for the conversion of the property, and a seventh for carrying it away, all with the same single criminal intent. And there is evidently no limit to the number of offenses into which a single criminal transaction inspired by a single criminal intent may be divided, if this rule of divison and punishment is once firmly established.

Similarly if a defendant breaks into a house at night for the purpose of relieving the bejeweled guests at a dinner party of material encumbrances, the robbery is indeed a heinous offense that should be severely punished. There is not merely a robbery, but a robbery aggravated by housebreaking. But in my view the defendant is not subject to consecutive punishment on the theory that there are consecutive crimes even though it is the same intention—intention to commit the felony of robbery—which makes a felony of his preliminary housebreaking as well as of the robbery that completes the sequence of the criminal episode.

If at the scene of the crime the defendant can be said to have realized that he has come to a fork in the road, and nevertheless decides to invade a different interest, then his successive intentions make him subject to cumula-

---

L.Ed. 1151 (1915) and Morgan v. Devine, 237 U.S. 632, 35 S.Ct. 712, 59 L.Ed. 1153 (1915). Those opinions applied the "same evidence" rule, "that the test of identity of offenses is whether the same evidence is required to sustain them; if not, then the fact that both charges relate to and grow out of one transaction does not make a single offense where two are defined by the statutes." (237 U.S: at 641, 35 S.Ct. at 715.)

Judge Sanborn's approach merits reconsideration at this time, however, because the same evidence rule, though followed in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), has been undercut by subsequent decisions. Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955); Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957); Ladner v. United States, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958); Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959). *See also* Ingram v. United States, 122 U.S.App.D.C. 334, 353 F.2d 872 (1965); Davenport v. United States, 122 U.S.App. D.C. 344, 353 F.2d 882 (1965). *See generally* Merker, Multiple Punishment in the Federal Courts: Consecutive Sentences Based on Overlapping Statutes Covering a Single Criminal Transaction, 4 AM.CRIM.L.Q. 206 (1966). Moreover the two Supreme Court opinions upholding consecutive punishments subsequent to *Bell* do not rely on the same evidence rule but on a construction of Congressional intent from other indicia. Gore v. United States, *supra*, note 2; Callanan v. United States, 364 U.S. 587, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961).

The "same evidence" rule has vitality for the purpose for which it was originally advanced, *see* Morey v. Commonwealth, 108 Mass. (12 Browne) 433 (1871)—to protect the state against charges of variance between pleading and proof. The prosecution may charge in various ways and in many counts what is essentially a continuing offense motivated by a single intent, and thereby assure that the criminal will be punished even though the prosecution *cannot establish an element of a particular offense*. Detailed consideration of any shortfall in the proof of one or another of the particular charges may be avoided, so long as at least one is adequately established, by the use of concurrent sentences. But that does not necessarily result in the conclusion that there may be consecutive punishments, as clearly appears from Bell v. United States, *supra*, and subsequent cases.

tive punishment, and he must be treated as accepting that risk, whether he in fact knows of it or not.[7] Under a general rule of lenity an accused merits the benefit of any reasonable doubt as to legislative intent, but where a man commits a crime with intent, and then expands or modifies his purpose and invades another interest, I see no reasonable basis for inferring a general legislative intent that the change means only a second crime without even a possibility of a second punishment.

My difficulty with general references to disincentives and multiple societal interests is that they may tend to revive the discarded "same evidence" rule formerly used for this problem,[8] and to focus on broad and perhaps abstract considerations rather than the purpose that animated the particular defendant and helps define his criminality. I thus fear that they are a distraction from the main problem of the defendant's intention, without genuine compensation in tracing an ascertainable legislative intention.

Appraisal of a defendant's criminal intention(s) may present problems of fact.[9] Indeed if a defendant pleads guilty to more than one crime—not the usual situation—he might conceivably desire affirmatively to claim a worse rather than a milder intent at the start of his offense in order to show that there was but one intent and he therefore should not be subject to consecutive punishment.[10] But when there is need our law has traditions and mechanisms for coping with even difficult factual questions.

Theoretical difficulties in making the fact determinations that I think requisite are softened by such considerations as these: First, resolution of the fact questions are for the judge. The jury may bring in a verdict of two crimes whether or not there may be consecutive punishments. Second, since the judge in fixing sentence makes an evaluation of the extent and nature of the defendant's criminality, he properly takes into account an appraisal of intention in the particular case which may be more so-

7. *See* Bell v. United States, *supra*, 349 U.S. at 83–84, 75 S.Ct. at 622, where Justice Frankfurter refers to the rule of strict construction as a general premise of the law, which does not "assume that offenders against the law carefully read the penal code before they embark on crime."

8. *Supra* note 6.

9. Appellant did not ask the District Court for a hearing on the issue of what his intent was at the critical times. Nor did he allege that he broke into the house with robbery his ultimate objective. His counsel argued that consecutive sentences for housebreaking and robbery occurring in the course of a single transaction are illegal per se. I have already explained why I regard that automatic rule erroneous. But I join in voting to affirm rather than suggesting a remand because there is nothing in this record to dispute the possibility that appellant formed a new intention in embarking on the robbery. In seeking collateral relief, the movant has the burden of at least suggesting a factual basis for his claim. Of course, I view this affirmance as without prejudice to a new motion adequately raising this issue. *See* Sanders v. United

States, 373 U.S. 1, 17–19, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).

10. Rule 11, FED. R. CR. P., provides that a court shall not accept a guilty plea without first determining "that the plea is made voluntarily with understanding of the nature of the charge *and the consequences of the plea.*" The words italicized herein for emphasis were added by the 1966 amendment, but even prior to 1966 were considered by this court to be implicit in the rule. Edwards v. United States, 103 U.S.App.D.C. 152, 155, 256 F. 2d 707, 710 (1958). This includes an understanding of the range of possible punishment. Carter v. United States, 113 U. S.App.D.C. 123, 306 F.2d 283 (1962).

Rule 11 suggests that a sentencing judge contemplating consecutive punishments would be well advised to make certain that the pleading defendant is aware of that exposure.

Appellant does not claim that the consecutive sentences imposed were greater than he understood at the time might be the judgment of the court. If that were the case he would likely have spoken up at once. What appellant relies on is the bare assertion that the court exceeded its sentencing authority under the law.

phisticated than (but not inconsistent with) the jury's verdict. If the judge thinks there is a reasonable doubt whether there was more than one underlying criminal intent, then the case would seem to call for concurrent sentences. It is hard to believe that the maximums authorized for serious crimes—increased by 50% in the case of recidivists [11]—are not enough to accomplish essential purposes of punishment, whether deterrence, reformation, or preventive banishment from society. Concurrent sentences have the additional advantage of obviating consequences of any legal error at the trial pertaining to one but not both judgments.

I think a rule that focuses on changes in the extent and direction of the defendant's criminal intention provides a basis for permitting cumulative punishment that is related to mens rea, and that this is sounder than a generalized approach that two or more consecutive punishments are proper for a single episode because criminality of the activity is established by more than one section of the code.

BAZELON, Chief Judge, with whom J. SKELLY WRIGHT, Circuit Judge, concurs (dissenting):

There are two questions before us. The first is whether, in some cases, the D. C. housebreaking and robbery statutes prohibit cumulative punishment. The second is whether Irby's is one of those cases.

The answer to the first question depends entirely upon statutory construction.[1] The issue is whether Congress authorized cumulative punishment not whether the trial judge properly exercised judicial sentencing discretion. No doubt, the process of statutory construction, which entails examining the history of these common law crimes, the legislative history of the statutes, the words of each statute, and the relationship between them, is very difficult. But the process is not necessarily more difficult here than in many other contexts in which we must construe statutes. In any event, the difficulty of the process does not excuse us from our duty.

We depend upon statutory construction because the authority to punish resides in the legislature, not in the courts, and we cannot arrogate to ourselves authority which has not been granted. Neither can we assume that Congress wanted separate punishment simply because it created separate crimes. To do so would be to allow the prosecutor and the trial judge almost unfettered discretion to multiply punishment since often it takes nothing more than a fertile imagination to spin several crimes out of a single transaction.[2] The cases are perfectly clear that the legality of cumulative punishment depends on more than a finding that separate crimes have been committed.[3] Indeed, the Supreme Court has established a "rule of lenity" which requires courts to forego cumulative punishment when there is a doubt about what Congress intended.[4]

11. 22 D.C.Code § 104 (1967).

1. Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959); Ladner v. United States, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958); Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957); Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955); Davenport v. United States, 122 U.S.App.D.C. 344, 353 F.2d 882 (1965); Ingram v. United States, 122 U.S.App.D.C. 334, 353 F.2d 872 (1965). See generally, Comment, Twice in Jeopardy, 75 YALE L.J. 262, 299-23 (1965).

2. See Munson v. McClaughry, 198 F. 72, 74 (CCA 8th 1912). Because the ability to spin out crimes is not based on any principles of penology, sentencing on the basis of how many crimes were spun out is an essentially arbitrary exercise. See Comment, *supra*, Note 1, at 304-308.

3. Prince v. United States, *supra*, Note 1; Ingram v. United States, *supra*, Note 1, 353 F.2d at 873, 874-875; Davenport v. United States, *supra*, Note 1, 353 F.2d at 883.

4. A very clear statement of the rule was made by Mr. Justice Frankfurter in Bell

This rule of lenity may well be a constitutionally compelled canon of construction. It is persuasively argued that

> Double jeopardy precludes a judge from convicting and punishing twice for the same offense. If a court creates multiple units of punishment *ad hoc* when, from all that appears in the statutes and their history, the legislature created only multiple units of prosecution, the court offends double jeopardy by punishing twice for a single legislative offense. Double jeopardy therefore requires that in determining the unit of punishment for related offenses, doubts should be resolved against punishing twice for what may be a single offense.[5]

The Government does not challenge the validity of the rule of lenity.[6] Nonetheless, the Government argues that these two crimes should be punishable cumulatively simply because they are separate offenses—historically separate as well as codified in separate statutes.[7] It may be that housebreaking and robbery were distinct offenses at common law. It should be noted, though, that both burglary (the common law predecessor to housebreaking) and robbery were thought to be aggravated forms of the same crime—larceny.[8] Further, certain activity punishable at common law only as a larceny now violates both the housebreaking and robbery statutes.[9] In any event, even if the housebreaking and robbery statutes had more distinct ancestors, that fact would not determine whether the two crimes could be punishable separately.[10]

On the issue of separate punishment, the common law and legislative history are even more ambiguous. Around the

---

v. United States, *supra*, Note 1 at 349 U.S. 83–84, 75 S.Ct. 620. For other formulations see Prince v. United States, *supra*, Note 1 at 352 U.S. 328–329, 77 S.Ct. 403; Ladner v. United States, *supra*, Note 1 at 358 U.S. 178, 79 S.Ct. 209; United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 221–222, 73 S.Ct. 227, 97 L.Ed. 260 (1952); Davenport v. United States, *supra*, Note 1 at 353 F.2d 883; Ingram v. United States, *supra*, Note 1 at 353 F. 2d 875. And see Comment, *supra*, Note 1, at 308–317.

5. Comment, *supra*, Note 1, at 317.

6. Brief for Appellee at 4–6.

7. Brief for Appellee at 6; Appellee's Petition for Rehearing at 8.

8. For the relationship between robbery and larceny, see, *e. g.*, Lamore v. United States, 78 U.S.App.D.C. 12, 136 F.2d 766 (1943); Turner v. United States, 57 App.D.C. 39, 16 F.2d 535 (1926); United States v. Sims, 27 Fed.Cas. p. 1080, No. 16,290 (C.C.D.C. 1835); 2 BISHOP, CRIMINAL LAW, § 1156 (9th ed. 1923). The relationship between burglary and larceny is illustrated by the fact that they could be charged in one indictment although the usual rule was that separate offenses could not be joined. This exception was made because larceny was "included" in the offense of burglary. WHARTON, CRIMINAL PLEADINGS AND PRACTICE §§ 243–244, 465 (8th ed. 1880); 1 WHARTON, CRIMINAL LAW, §§ 27, 818–19 (10th

ed. 1896); United States v. Dixon, 25 Fed. Cas. p. 872, No. 14,968 (C.C.D.C. 1807).

9. For example, at common law, a defendant who entered a bedroom non-forcibly, and then stole money from a dresser drawer while the victim was asleep, could be convicted of larceny only. There would have been no burglary since there was no breaking. See, *e. g.*, United States v. Dixon, *supra*, Note 8; 2 BISHOP *op. cit.*, *supra*, Note 8, §§ 90, 91. There would have been no robbery since the victim was not put in fear and since the defendant did not use force. See, *e. g.*, Turner v. United States, *supra*, Note 8; United States v. Sims, *supra*, Note 8; and 2 BISHOP, *op. cit.*, *supra*, Note 8, §§ 1156, 1167. Now the entry would be a housebreaking even though non-forcible. See, *e. g.*, Henderson v. United States, 84 U.S.App.D.C. 295, 172 F.2d 289 (1949). Presumably, under our expansive reading of the robbery statute, stealing the money from the dresser would be a robbery. See, *e. g.*, Spencer v. United States, 73 App.D.C. 98, 116 F.2d 801 (1940); Turner v. United States, *supra*, Note 8.

10. The Government suggests two further arguments—first, that consecutive punishment has been prohibited only when the crimes arose out of the same act, and second, that Cross v. United States, 122 U.S.App.D.C. 380, 354 F.2d 512 (1965) should control. Prince v. United States,

time of codification there was a lively debate about the legality of cumulative punishment for crimes similar to house-breaking and robbery.[11] Congress does not seem to have taken any position when it codified the D.C. laws, for there is no provision in the original D.C.Code (or the present one) about cumulative punishment. And there is no mention of this problem in the Congressional reports and debates which preceded passage of the Code.

We must turn, then, to the statutes themselves. The housebreaking statute reads as follows: "Whosoever shall, either in the night or in the daytime, break and enter, or enter without breaking, any dwelling * * * whether at the time occupied or not * * * with intent * * * to commit any criminal offense, shall be imprisoned for not more than fifteen years." 22 D.C. Code § 1801 (1961). Housebreaking, by the terms of the statute, is committed in preparation for some other criminal offense which is intended at the time of entry. It seems most likely that Congress, instead of desiring to punish for both the preparation and the completion, created two separate crimes in order to punish those housebreakers who are

thwarted and who do not complete the intended crime.

The Supreme Court faced a similar situation in *Prince v. United States.*[12] There the defendant was convicted of robbing a federally insured bank and entering the bank with intent to commit a felony. The Supreme Court reasoned that:

It is a fair inference from the wording in the Act, uncontradicted by anything in the meager legislative history, that the unlawful entry provision was inserted to cover the situation where a person enters a bank for the purpose of committing a crime, but is frustrated for some reason before completing the crime. The gravamen of the offense is not in the act of entering, which satisfies the terms of the statute even if it is simply walking through an open, public door during normal business hours. Rather the heart of the crime is the intent to steal. This mental element merges into the completed crime if the robbery is consummated.[13]

Therefore, the Supreme Court held that Congress did not intend to punish cumulatively for the preparation and the completed crime.[14]

*supra,* Note 1, disposes of the first point. There the crimes were committed *seriatim,* and nonetheless the Supreme Court prohibited cumulative punishment. In *Cross* all the parties *assumed* that the trial judge had authority to punish cumulatively for the two crimes. The appellant was complaining only about the fact that the trial judge provided cumulative sentences for him and concurrent sentences for two co-defendants. Appellant Cross' Brief 42–44. Here the authority to set cumulative punishment is being attacked.

11. See, *e. g.,* Munson v. McClaughry, *supra,* Note 2; Halligan v. Wayne, 179 F. 112 (9th Cir. 1910); Anderson v. Moyer. 193 F. 499 (N.D.Ga.1912); Ex parte Peters, 12 F. 461 (C.C.W.D.Mo.1880); 1 BISHOP, CRIMINAL LAW, §§ 1060, 1062 (9th ed. 1923), and cases cited therein. In 1915 the Supreme Court resolved this conflict, insofar as it related to the federal statute protecting the mail, in favor of cumulative punishment. Morgan v. Devine, 237 U.S. 632, 35 S.Ct. 712, 59 L.Ed.

1153. The *Morgan* case is distinguishable from ours. See Note 16, *infra.*

12. *Supra,* Note 1. Decisions in this area of the law depend on the construction of particular statutes. Therefore, other cases, dealing with different statutes, may not be very helpful. In *Prince* itself the Supreme Court said:
None of these [other cases] is particularly helpful to us because we are dealing with a unique statute of limited purpose and an inconclusive legislative history. It can and should be differentiated from similar problems in this general field raised under other statutes. The question of interpretation is a narrow one, and our decision should be correspondingly narrow. 352 U.S. at 325, 77 S.Ct. at 405.
The same may be said for any case in this area. However, when the logic of a Supreme Court case applies, we may use it as a guide for decision.

13. 352 U.S. at 328, 77 S.Ct. at 406–407.

14. The Supreme Court seemed to rely also on a statement made by the Attorney Gen-

A similar inference is warranted here, since, as in *Prince,* our statute defines housebreaking as entry with intent to commit another crime. And, as in *Prince,* the gravamen of the offense is not simply the act of entering, which need not be forcible to satisfy the terms of the statute.[15] Indeed, it is possible that a person may be guilty of housebreaking although he has not committed a criminal trespass as long as he enters the premises with the required criminal intent.

Even if a criminal trespass is a necessary prerequisite to a finding of housebreaking, it is evident that the illegal act of entry is not the gravamen of housebreaking. If nothing more than entering without permission were involved, a penalty in the order of six months would probably be thought enough by Congress.[16] However, Congress provided a much stiffer penalty for housebreaking. And the likely reason is that Congress believed that entry with an intent to commit another crime would often, in fact, lead to that other crime. As in Prince, the intent to commit another crime is at the heart of the offense. By deterring housebreaking Congress meant also to deter the intended crime which might follow. If so, then the housebreaking statutes punishes for the possibility or probability of the intended crime. We do not think Congress would have wanted to impose punishment of fifteen years for the probability of the intended crime and an additional fifteen years for the crime itself.[17]

Under this analysis, however, cumulative punishment is prohibited only if the crime defendant in fact committed was the same as the crime he intended to commit when he entered the dwelling. This seems to be the question which divides the court. The majority does not think "the indictment can be characterized as asserting that appellant's course of conduct was motivated by a single criminal intent." Judge Leventhal thinks the record is unclear and would require more specific allegations of a single intent. We think the record is clear enough to show that Irby had

---

eral explaining the purpose of the proposed amendments to the Bank Robbery Act. However, his statement did not relate to the part of the statute involved in *Prince.* It seems clear from the Supreme Court's language, quoted above at Note 13, *supra,* that the Court relied primarily on the *words* of the Act coupled with the *absence* of legislative history to the contrary. We cannot assume that the Court relied on legislative history which it characterized as "inconclusive" (352 U.S. at 325, 77 S.Ct. 403) and "meager" (352 U.S. at 328, 77 S.Ct. 403). See H.R. REP. No. 732, 75th Cong., 1st Sess.; S.REP. No. 1259, 75th Cong., 1st Sess.; 81 CONG.REC. 2731, 4656, 5376–5377, 9331.

15. *Compare* Morgan v. Devine, *supra,* Note 11, *with* Prince v. United States, *supra,* Note 1 at 352 U.S. 328, n. 9, 77 S.Ct. 403.

16. See 22 D.C.CODE, § 3102 (1961).

17. There does not appear to be substantial disagreement on the issue of statutory construction. Judge Leventhal, in his concurring opinion, invokes a "generalized legislative intent" and concludes that a defendant "is not subject to consecutive punishment on the theory that there are consecutive crimes [when] it is the same intention—intention to commit the felony of robbery—which makes a felony of his preliminary housebreaking as well as of the robbery that completes the sequence of the criminal episode. * * * If the judge thinks there is a reasonable doubt whether there was more than one underlying criminal intent, then the case would seem to call for concurrent sentences."

I agree with this conclusion but do not feel it is necessary to rely on a generalized legislative intent in this case, since the statutes themselves indicate what the legislative intent was. Also Judge Leventhal fails to explain why it is harder to ascertain legislative intent when Congress is acting as a "super-territorial legislature" than when it is exercising one of its delegated powers.

In the majority opinion, Judge McGowan states that the "Supreme Court has, of course, been alert to prohibit double punishment for the commission of a federally-created crime and the attempt to do so. See Prince v. United States * * *." As discussed below, our real ground of disagreement appears to be on the question of whether there was only a single criminal episode in this case.

only one criminal purpose when he committed the two crimes.

According to the indictment, Irby entered the complainant's dwelling with an "intent to steal [his] property." While in the house, Irby carried out his intention and stole two rings worth $2,200.[18]

The fact that in order to steal he did things which made his crime robbery, as opposed, for example, to grand larceny or petit larceny, does not negate the fact that what he did within the house was motivated by the same criminal purpose ("to steal property of another") as his illegal entry.[19]

Furthermore, it is significant that Irby was originally charged with carrying a dangerous weapon and assault with a dangerous weapon.[20] If these charges are correct, they suggest that when Irby entered the dwelling he was already prepared to use "force and violence" (*i. e.*, to commit robbery) if necessary.

A California state court was faced with a similar situation in Downs v. State.[21] There two men broke into an office building and were engaged in looting the safe when the janitors entered the room. The two men then tied the janitors up at gunpoint. The state argued that consecutive sentences for burglary and robbery should be upheld since the trier of fact could have found that the intent to commit robbery originated only after the janitors arrived on the scene. The California court disagreed:

> Regardless of the wording of the information, petitioner entered the telephone building with the single purpose to rifle its safe, hoping no doubt that this could be accomplished without interference, but prepared for that event by carrying a gun which he intended to and did threateningly use to consummate the crime. * * * The information, had it been worded with strict accuracy, would have accused petitioner of entering to commit *either theft or robbery* as might become necessary.[22]

Unless courts are willing to reason in this fashion, no limits can be placed on cumulative punishment in housebreaking cases. A defendant can rarely demonstrate what his mental state was when he entered the dwelling. His original intent must be inferred from his later conduct.[23] If there are facts

---

18. The indictment read:
   On or about February 24, 1958, * * * Roy J. Irby entered the dwelling of [complainants], with intent to steal property of another.
   * * * * *
   [Roy J. Irby there] * * * by force and violence and against resistance and by sudden and stealthy seizure and snatching and by putting in fear, stole and took from the person and from the immediate actual possession of [one of the complainants] * * * property * * * of the value of about $2,-200.00, consisting of [two] finger ring[s].

19. We think that it is unwise as well as impractical to require the defendant to show that what he did within the house was specifically intended when he entered the house. The Supreme Court has agreed, at least implicitly. According to the Court's characterization, the defendant in Prince v. United States, *supra*, Note 1, was convicted of robbery and entering a bank with the intent to commit a *felony* (not a *robbery*). Id. at 352 U.S. 324, 77 S.Ct. 403. However, the Court assumed that, at least in a general way, the "mental element" which motived the illegal entry also motivated the robbery. *Id.* at 328, 77 S.Ct. 403.

20. These counts were dismissed when Irby pled guilty to housebreaking and robbery. The Government attorney stated that "The other counts are counts which would be included in the others. I think this is adequate disposition and would so recommend."

21. 202 Cal.App.2d 609, 20 Cal.Rptr. 922 (1962).

22. *Id.* at 614, 20 Cal.Rptr. at 925 (emphasis in original). See also People v. Helms, 242 Cal.App.2d 476, 51 Cal.Rptr. 484 (1966); In re Dowding, 188 Cal.App. 2d 418, 10 Cal.Rptr. 392 (1961).

23. The Government itself often uses evidence of defendant's later conduct to prove he entered with an intent to commit a

suggesting a departure from the original intent, the Government should have the burden of asserting them.[24]

We think the record sufficiently shows that defendant entered the dwelling with the objective of stealing property, by force if necessary, and that he carried out this objective. Since there is substantial doubt that Congress intended cumulative punishment in this situation, the rule of lenity must be applied. Irby should have been punished for either housebreaking or robbery but not both consecutively.

24. If, for example, defendant entered a dwelling equipped with burglar's tools, burlap bag, etc., but then raped an occupant, the Government could use the possession of the tools as evidence that his intended and actual crimes were different.