**UNITED STATES of America**

v.

**Grantland D. BUTLER, Appellant.**

**No. 71–1221.**

United States Court of Appeals,
District of Columbia Circuit.

April 6, 1972.

Mr. William R. Malone, Huntsville, Tex. (appointed by this court), was on the pleadings for appellant.

Messrs. Harold H. Titus, Jr., U. S. Atty., John A. Terry, Oscar Altshuler, John P. Hume and Paul L. Friedman, Asst. U. S. Attys., were on the motion for summary affirmance, for appellee.

Before ROBINSON and MacKINNON, Circuit Judges.

MacKINNON, Circuit Judge:

Appellant Butler attacks the legality of consecutive sentences imposed on January 13, 1956 upon his conviction for second degree murder, housebreaking, and larceny. Butler, along with two co-defendants, had broken into a dry cleaning establishment, beaten and strangled to death an elderly watchman, and stolen

some money and other property.[1] The jury's verdict included a recommendation that the court impose the maximum penalty for his conviction for murder.[2] The trial court sentenced Butler (and each of his confederates) to imprisonment for a period of

> Forty (40) months to Ten (10) years on count three [larceny]; Five (5) years to Fifteen (15) years on count two [housebreaking], to take effect at the expiration of sentence imposed in count three; Fifteen (15) years to Life on count one [second degree murder], to take effect at the expiration of sentences imposed on counts two and three (Judgment and Commitment)[3]

No appeal was taken.

### Prior Motions

On March 28, 1956 Butler submitted a pro se motion for "reduction of sentence" in which he requested "joining my sentences together." The sentencing judge denied this motion on April 10, 1956.

On June 3, 1959 appellant made another pro se motion which the trial court treated both as one to proceed on appeal without prepayment of costs, and as one under 28 U.S.C. § 2255. The court found that the appeal was "frivolous, without merit, and not taken in good faith," and that "[t]he petition [was] not timely filed." With respect to the § 2255 motion, the court found that Butler's contentions "that he was arrested illegally and without a warrant" were, "[u]nder Plummer v. United States, 104 U.S.App.D.C. 211, 260 F.2d 729 (CADC

Oct. 9, 1958) . . . not grounds for vacating a sentence under Section 2255." Accordingly the motion was denied on June 24, 1959.

On September 10, 1959 the trial court denied yet another pro se motion, filed July 1, 1959, for leave to appeal in forma pauperis on the ground that the appeal was "not taken in good faith, and is frivolous." After previously denying a motion for a transcript, or portions thereof, on December 21, 1959 the trial court denied leave to proceed on appeal without prepayment of costs since "it was ascertained that a transcript of the trial was in the possession of counsel for one of the defendants and said transcript has now been obtained and delivered to the petitioner."

### The Instant Motions

On November 10, 1970 Butler again petitioned under 28 U.S.C. § 2255, pro se, to set aside the sentence or in the alternative to correct it. This motion was denied on February 2, 1971 on the grounds that "the files and records in the case conclusively show that the petitioner is entitled to no relief . . . ." The present appeal followed in which appellant's principal contention is, in effect, that it was illegal for the court to impose consecutive sentences for murder, housebreaking, and larceny. Counsel was appointed by this court, and on January 4, 1972 he made a Motion for Remand pursuant to Federal Appellate Rule 10(c) in order to compile the sentencing record or, in the alternative, resentencing. The Government opposed the request for remand, and also moved for summary affirmance of the

---

1. The inquest found that the watchman was "beaten and tied up with a rope and a gag placed over his mouth . . . [and that he] came to his death as a result of asphyxia due to strangulation, hemorrhage and shock."

2. D.C.Code § 22–2404 (1951) (31 Stat. 1321) provided:
   . . . . The punishment of murder in the second degree shall be imprisonment for life, or for not less than twenty years.

3. The entry on the jacket of Crim. No. 919–55 in the U.S. District Court states:
   Forty (40) months to ten (10) years on Count three [grand larceny]; Five (5) years to Fifteen (15) years on Count two [housebreaking], said sentence to take effect at the EXPIRATION of sentence imposed on Count three; Fifteen (15) years to Life on Count one [second degree murder], said sentence to take effect at the EXPIRATION of sentence on Count two.

trial court's denial of the § 2255 motion. We consider the two motions separately.

### The Motion for Remand

The present Motion for Remand asserts a necessity to reconstruct the sentencing proceedings (which were not previously transcribed) in order to determine the facts which led the court to impose consecutive sentences. Presumably, appellant considers this a necessary prerequisite to our determining whether the congressional intent with respect to consecutive or concurrent sentences was properly carried out.[4]

Unfortunately, the reporter who served at the sentencing of appellant (thus satisfying the requirements of the Court Reporters Act, 28 U.S.C. § 753(b)) is deceased. Her notes of the January 13, 1956 sentencing cannot be located; appellant's trial counsel disclaims any recollection of what was said at sentencing; the Assistant U. S. Attorney who prosecuted the case has long since left the prosecutor's office; and the sentencing judge retains no notes of the sentencing session. However, since the case was tried there is no doubt about the facts constituting the offense, nor is there any question that the sentencing judge intended to impose precisely the sentence that is here attacked. He adjudged sentences in identical terms upon each of the three defendants, and he has since denied several motions by appellant seeking to have the three sentences run concurrently rather than consecutively.

With this background, and keeping in mind the jury's recommendation to impose the maximum sentence on the murder count, we find no reason to doubt that the judge intended to impose consecutive sentences because he found the separate counts to be separate offenses, and because the defendants'

criminal conduct was flagrant, violent, and extreme. This is not a case where the record only contains a few of the specific facts of the offense, such as may be the case where consecutive sentences are imposed on a guilty plea. Here the factual circumstances surrounding the commission of the crimes were fully litigated during a 5-day trial recorded in a transcript comprising over 750 pages of testimony. The trial judge was fully acquainted with all the facts of appellant's criminal conduct. We thus see no need to reconstruct the sentencing record in an attempt to determine either the judge's intention in imposing consecutive sentences or the facts upon which such sentences were imposed. Such matters are fully determinable from the transcript. Appellant's motion for remand is thus denied.

### The Motion for Summary Affirmance

The Government Motion for Summary Affirmance requires us to consider the legality of imposing consecutive sentences for the offenses here committed. The requirements for consecutive sentencing were considered by this court sitting en banc in Irby v. United States, 129 U.S. App.D.C. 17, 390 F.2d 432 (1967), in which we affirmed consecutive sentences adjudged upon convictions for housebreaking and robbery under the D.C. Code. The *Irby* decision furnishes the basic authority which justifies our determining this case on a motion for summary affirmance.

The starting point for analysis is the "same evidence" rule of Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L.Ed. 306 (1932):

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses

---

4. The suggestion corresponds to that made by the *amicus curiae* appointed by this court in our en banc consideration of Irby v. United States, 129 U.S.App.D.C. 17, 20, 390 F.2d 432, 435 (1970). We found it unnecessary to adopt or reject the suggestion there because the procedure it would require could not possibly be performed. We find this situation to exist here, as well.

or only one is whether each provision requires proof of an individual fact which the other does not.

We noted in United States v. Spears, 145 U.S.App.D.C. 284, 449 F.2d 946, 950 (1971), however, that the *Blockburger* test "has not been followed blindly," and that "where the intent of Congress was manifest" in a specific statutory scheme, "[i]t is the intent of Congress that controls." [5] A further limitation on the *Blockburger* rule, as initially expressed by Mr. Justice Frankfurter, is: "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." Bell v. United States, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955).[6] This is, however, merely a different expression of the age old rule that criminal statutes are to be strictly construed in favor of the accused. Commissioner of Internal Revenue v. Acker, 361 U.S. 87, 91, 80 S. Ct. 144, 4 L.Ed.2d 127 (1959); Smith v. United States, 360 U.S. 1, 9, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959); Yates v. United States, 354 U.S. 298, 304, 77 S. Ct. 1064, 1 L.Ed.2d 1356 (1957); United States v. Wiltberger, 18 U.S. (5 Wheat.) 76, 95, 5 L.Ed. 37 (1820). The latter opinion by Chief Justice Marshall states:

> The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department.

It is the legislature, not the court, which is to define a crime, and ordain its punishment.

It is said, that notwithstanding this rule, the intention of the law-maker must govern in the construction of penal, as well as other statutes. This is true. But this is not a new independent rule which subverts the old. It is a modification of the ancient maxim, and amounts to this, that though penal laws are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the legislature. The maxim is not to be so applied as to narrow the words of the statute to the exclusion of cases which those words, in their ordinary acceptation, or in that sense in which the legislature has obviously used them, would comprehend.

18 U.S. (5 Wheat.) at 95.

Finally, we note that the *amicus curiae* appointed by us in *Irby*, as well as the two dissenters and the concurring judge in that case, have urged a wholly different test for determining the propriety of consecutive sentences. Their test would focus on the subjective intent of the defendant in the perpetration of the crimes rather than the legislative intent in formulating the statutes violated. Where the defendant's behavior flowed from a unitary purpose and a single course of conduct followed to attain that purpose, only one crime would have been committed from the standpoint of sentencing, thus authorizing only concurrent sentences for multiple convictions resulting from violations of specific statutes during the course of that con-

---

5. Of course, a specific congressional intent can be manifested either as a desire to impose consecutive sentences or to ensure single sentences. *Compare* Blockburger v. United States, *supra, and* Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), *and* Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), *and* Callanan v. United States, 364 U.S. 587, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961), *with* Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), *and*

Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959), *and* United States v. Spears, *supra.*

6. *See also* Ladner v. United States, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958); Ingram v. United States, 122 U. S.App.D.C. 334, 353 F.2d 872 (1965); Davenport v. United States, 122 U.S.App. D.C. 344, 353 F.2d 882 (1965). *But cf.* Barringer v. United States, 130 U.S.App. D.C. 186, 399 F.2d 557 (1968), cert. denied, 393 U.S. 1057, 89 S.Ct. 697, 21 L.Ed.2d 698 (1969).

duct. In essence, appellant asks us to again consider the *amicus's* proposal for formulating a new test for consecutive sentencing, while also arguing that the rule of lenity should apply in his favor here. We reject both of these contentions.

■ This case comes to us in the same procedural context as *Irby*, where we remarked:

> An attack on consecutive sentences is one which should be made at the time the sentences are imposed, when there is the opportunity to make a meaningful inquiry into the facts. It is not suited to the vehicle of belated collateral attack.

129 U.S.App.D.C. at 20, 390 F.2d at 435. Judge Leventhal, despite his expression of apparent agreement with the *amicus's* test, concurred in the result in *Irby* because of his belief that the adoption of such a test should only follow "the analyses generated by the tensions of the adversary system, and . . . by reflections of a sentencing judge whose attention has been directed to the elements of the approach advanced for consideration." *Id.* This case is not the appropriate vehicle for reconsideration and adoption of such a test, even if we were so inclined.

■ We also reject the suggestion that the legislative intent with regard to the crimes of murder, housebreaking, and larceny is sufficiently ambiguous to require invocation of the rule of lenity. Our opinion in *Irby* adopted the excellent analysis of my colleague, then-District Judge Robinson,[7] and I again turn to that opinion here. To begin, there can be no question that the offenses of murder, housebreaking, and larceny each require elements of proof which are not common to the other two; the *Blockburger* test is thus satisfied. Next, each of these offenses "is historically an independent crime"; murder, larceny, and "burglary—the forerunner of housebreaking—were, as every lawyer knows, different common law offenses." 250 F.Supp. at 987. The three crimes historically protected different societal interests: the security of the person and the value of human life; the physical security of dwellings and other real property; and the right to possession of personal property.

Though there is no explicit congressional expression of an intent that these crimes can be punished consecutively, rather than finding in this cause for invocation of the rule of lenity, we believe that "there can be attributed 'to Congress a tacit purpose—in the absence of any inconsistent expression—to maintain a long-established distinction between offenses essentially different.'" 250 F.Supp. at 988.[8] It would be the epitome of unfairness to impose the same sentence for one crime as for three separately proscribed crimes. There is nothing in the legislative history of criminal statutes in Congress that indicates Congress ever intended to adopt such a bargain basement philosophy—three for the price of one. To do so would encourage rather than deter crime—for who would abide by the law—once he committed a single crime—if there were no added penalty for other violations.

■ Finally, turning to the facts of appellant's case, we find clear violations of three separate statutes[9] alleged in

---

7. Irby v. United States, 250 F.Supp. 983 (D.D.C.1965).

8. Quoting United States v. Rabinowich, 238 U.S. 78, 88, 35 S.Ct. 682, 59 L.Ed. 1211 (1915), also quoted in Callanan v. United States, 364 U.S. 587, 594, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961).

9. The murder statute provides:
> Whoever with malice aforethought, except as provided in sections 22–2401,

22–2402, kills another, is guilty of murder in the second degree.
D.C.Code § 22–2403 (1951). For the penalty, *see* note 2, *supra.* The housebreaking statute provides:
> Whoever shall, either in the night or in the daytime, break and enter, or enter without breaking, any dwelling, bank, store, warehouse, shop, stable, or other building, or any apartment or room, whether at the time occupied or

the indictments.[10] The criminal plan carried out by Butler and his co-defendants involved separate acts directed against three separate societal interests protected by these statutes. As in *Irby,* their "course of conduct admitted of interruption and alteration in response to the deterrent influence of additional punishment." 129 U.S.App.D.C. at 20, n. 4, 390 F.2d at 435, n. 4. Having committed the housebreaking and encountering the watchman, it was clearly possible for appellant and his confederates to have run away without attacking the watchman. And having beaten and tied Mr. Armhold, they could have ensured

that their knots did not strangle him and made their escape without stealing anything. That Butler and the others continued their criminal conduct through this sequence of acts resulted in their having committed three distinct crimes for which Congress has provided three separate penalties.[11] Under such circumstances it was entirely proper for the trial judge to impose consecutive sentences for these crimes. Accordingly, the motion for summary affirmance is granted, and the judgment of the trial court on appellant's § 2255 petition is affirmed.

Judgment accordingly.

---

not, or any steamboat, canal boat, vessel, or other watercraft, or railroad car, or any yard where any lumber, coal, or other goods or chattels are deposited and kept for the purpose of trade, with intent to break and carry away any part thereof or any fixture or other thing attached to or connected with the same, or to commit any criminal offense, shall be imprisoned for not more than fifteen years.

D.C.Code § 22–1801 (1951). The larceny statute provides:

Whoever shall feloniously take and carry away anything of value of the amount or value of $100 or upward, including things savoring of the realty, shall suffer imprisonment for not less than one nor more than ten years.

D.C.Code § 22–2201 (1951).

10. *First Count:*

On or about August 24, 1955, within the District of Columbia, Grantland D. Butler, Raymond L. Tucker and Walter L. Battle, perpetrated a housebreaking by entering the building of Aristo Dry Cleaners and Dyers, Inc., a body corporate, with intent to steal property of another; and in perpetrating said housebreaking, an offense punishable by imprisonment in the penitentiary, purposely did murder David Armhold, Jr., by means of striking and beating him about the head and body and by strangulation.

*Second Count:*

On or about August 24, 1955, within the District of Columbia Grantland D. Butler, Raymond L. Tucker and Walter L. Battle, entered the building of Aristo Dry Cleaners, Inc., a body corporate, with intent to steal the property of another.

*Third Count:*

On or about August 24, 1955, within the District of Columbia, Grantland D. Butler, Raymond L. Tucker and Walter L. Battle, stole the property of Aristo Dry Cleaners and Dyers, Inc., a body corporate, of the value of about $144.00, consisting of the following: approximately $140.00 in money, one metal cash box of the approximate value of $1.00, and one leather envelope, zipper type, of the approximate value of $3.00.

11. For similar holdings concerning closely analogous crimes, *see* Morgan v. Devine, 237 U.S. 632, 35 S.Ct. 712, 59 L.Ed. 1153 (1915) (breaking and entering a U.S. Post Office with intent to commit larceny therein, and the completed theft); Pinkerton v. United States, *supra* note 5, and Callanan v. United States, *supra* note 5 (both involving the combination of conspiracy to commit an offense, and the completed offense); Manning v. United States, 270 A.2d 504 (D.C.Ct.App.1970) (attempted 2d-degree burglary, and attempted petit larceny).