**Norma J. GOODE, Petitioner,**

v.

**Carson MARKLEY, Warden, et al., Respondents.**

**No. 78–8100.**

United States Court of Appeals, District of Columbia Circuit.

July 5, 1979.

As Amended July 23, 1979.

---

**61.** *Id.* at 37.

**62.** Joint Brief of the Interstate Commerce Commission and the United States at 38.

Before FAHY, Senior Circuit Judge, and MacKINNON and ROBB, Circuit Judges.

Opinion for the Court filed by MacKINNON, Circuit Judge.

Dissenting statement filed by FAHY, Senior Circuit Judge.

MacKINNON, Circuit Judge:

Norma J. Goode was convicted in the United States District Court for the District of Columbia of possession of narcotics with intent to distribute in violation of 21 U.S.C. § 841(a). On July 22, 1976, the court sentenced her to prison for a term of twenty months to five years (hereafter "narcotics sentence"). Subsequently, Goode was convicted in the Superior Court for the District of Columbia of armed robbery in violation of D.C.Code § 22–2901. On October 27, 1976, that court sentenced her to prison for a term of two to six years (hereafter "armed robbery sentence"). The armed robbery sentence was to run consecutively to the narcotics sentence. Together, the two sentences totalled forty-four months to eleven years. In accordance with the applicable statutes,[1] Goode was committed to the custody of the Attorney General of the United States for incarceration under both sen-

tences. Pursuant to these same provisions, the Attorney General designated the federal penitentiary at Alderson, West Virginia as the place of confinement where both of Goode's sentences were to be served.

In November 1977 Goode applied to Warden Carson Markley of the Alderson penitentiary for a January 1978 parole hearing on her narcotics sentence. Goode reasoned that as of February 1978 she would have served one-third of her narcotics sentence and would therefore be entitled to a parole hearing—and to be eligible for parole—on that sentence notwithstanding the fact that she had not yet served any portion of her armed robbery sentence.[2] Warden Markley denied her application. Goode then appealed to the Regional Director of the Bureau of Prisons, the Director of the Bureau of Prisons, the Attorney General, the United States Parole Commission, the District of Columbia Board of Parole, and the District of Columbia Department of Corrections, and these appeals were also denied. In consequence she filed petitions for a writ of habeas corpus,[3] or in the alternative for a writ of mandamus,[4]

---

1. 18 U.S.C. § 4082(a) (1976) provides:

   A person convicted of an offense against the United States shall be committed, for such term of imprisonment as the court may direct, to the custody of the Attorney General of the United States, who shall designate the place of confinement where the sentence shall be served.

   D.C.Code § 24–425 (1973) provides:

   All prisoners convicted in the District of Columbia for any offense . . . shall be committed, for their terms of imprisonment, and to such types of institutions as the court may direct, to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinements where the sentences for all such persons shall be served.

2. Goode premised this reasoning on 18 U.S.C. § 4205(a) (1976), which provides:

   Whenever confined and serving a definite term or terms of more than one year, a prisoner shall be eligible for release on parole after serving one-third of such term or terms or after serving ten years of a life sentence or of a sentence of over thirty years, except to the extent otherwise provided by law.

3. See 28 U.S.C. § 2241 (1976). This circuit has not decided whether habeas is available to a

petitioner alleging only an unlawful denial of parole consideration. *Frady v. United States Bureau of Prisons*, 187 U.S.App.D.C. 118, 119 n.1, 570 F.2d 1027, 1028 n.1 (1978) (per curiam). Other circuits have held that a denial of parole eligibility sufficiently implicates liberty interests to permit habeas relief. *E. g., United States ex rel. Marrero v. Warden*, 483 F.2d 656, 659–60 (3d Cir. 1973), *rev'd on other grounds*, 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974); *Martin v. Virginia*, 349 F.2d 781, 784 (4th Cir. 1965). We have no occasion to decide that issue here because we find on the merits that Goode's claims are baseless. *See generally United States v. Addonizio*, —— U.S. ——, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979); *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, —— U.S. ——, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).

4. The mandamus provision codified at 28 U.S.C. § 1361 (1976) permits courts to compel an administrative officer to perform a duty owed the plaintiff. *See Haneke v. Secretary of Health, Education & Welfare*, 175 U.S.App.D.C. 329, 333–334, 535 F.2d 1291, 1295–96 (1976). This means that if Goode demonstrated that Warden Markley was bound by statute to provide her with a hearing on parole from her narcotics sentence the district court would

contending that these administrative agencies unlawfully denied her a parole hearing. The district court dismissed the suit as frivolous, *see* 28 U.S.C. § 1915(d) (1976), and later denied Goode's motions for leave to appeal without prepayment of costs and for a statement of reasons for the denial pursuant to Federal Rule of Appellate Procedure 24(a).

Following this last denial, Goode filed in this court for leave to appeal *in forma pauperis*. By order dated March 26, 1979, we held this motion in abeyance and requested the district court to provide a statement of reasons under Rule 24(a). The district court promptly complied. We now deny Goode's motion essentially on the grounds articulated by the district court.

Goode's challenge to Warden Markley's denial of a hearing to determine her parole eligibility under the narcotics sentence hinges on her view that sentences imposed by the District of Columbia are equivalent to those entered by the courts of a sovereign state. On this reasoning, she asserts first that her consecutive sentences cannot be aggregated for the purpose of determining parole eligibility, and second that the armed robbery sentence imposed by the Superior Court is tantamount to a detainer lodged by a state against a federal prisoner, which under 28 C.F.R. § 2.31 (1978) is not a basis for denying parole. For good measure, she adds that the Warden's contrary determinations deprive her of the equal protection of law guaranteed by the fourteenth amendment and violate her fifth amendment right against double jeopardy.

■ Violations of the District of Columbia Code and violations of the United States Code are all crimes against a single sovereign, namely, the United States. *See United States v. Jones*, 174 U.S.App.D.C. 34, 38, 527 F.2d 817, 821 (1975); *United States v. Knight*, 166 U.S.App.D.C. 21, 28, 509 F.2d 354, 361 (1974). All crimes prosecuted under the District of Columbia Code are maintained in the name of the United

States. D.C.Code § 23–101 (1973); *see Clemmer v. Alexander*, 111 U.S.App.D.C. 189, 192, 295 F.2d 176, 179 (1961); *United States v. Cella*, 37 U.S.App.D.C. 433, 435 (1911), *cert. denied*, 223 U.S. 728, 32 S.Ct. 526, 56 L.Ed. 633 (1912). Individuals convicted of crimes under either Code are committed to the custody of the Attorney General of the United States. *Compare* 18 U.S.C. § 4205(a) (1976) *with* D.C.Code § 24–425 (1973); *see* n.1 *supra*. The Attorney General can commit violators of the District of Columbia criminal code to federal correctional facilities. *See* D.C.Code § 24–425 (1973). District of Columbia Code offenders properly incarcerated in federal penitentiaries are subject to parole review before the United States Parole Commission rather than the District of Columbia Parole Board. *See Curry-Bey v. Jackson*, 422 F.Supp. 926, 932–33 (D.D.C.1976). The District of Columbia Court Reform and Criminal Procedure Act, Pub.L.No.91–358, tit. I, 84 Stat. 475 (1970) (codified at D.C. Code § 11–101 *et seq.* (1973)), did not vitiate the essential character of the District of Columbia as an arm of the sovereign United States. *See Palmore v. United States*, 411 U.S. 389, 394–97, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973); *cf. District of Columbia v. Carter*, 409 U.S. 418, 429–32, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973).

■ Goode's narcotics sentence and her armed robbery sentence, therefore, were imposed by the same sovereign and, in accordance with the Attorney General's designation, are to be served in the same federal penal institution. That being so, it is well settled that it is proper for the U.S. Parole Commission to aggregate consecutive sentences for the purpose of determining parole eligibility. *Wright v. Blackwell*, 402 F.2d 489, 489 (5th Cir. 1968); *Walker v. Taylor*, 338 F.2d 945, 946 (10th Cir. 1964); 67A C.J.S. *Pardon & Parole* § 46b (1978); *see also Stoneburg v. Hiatt*, 42 F.Supp. 596, 597 (M.D.Pa.1942). Because Goode is ineligible for a parole hearing until she has

---

have jurisdiction to proceed, and upon a showing that the Warden indeed failed to provide the required hearing would be authorized to

issue a writ compelling adherence to the statute.

served at least one-third of the "term *or terms*" she is serving at Alderson, 18 U.S.C. § 4205(a) (1976) (emphasis added), she need not be granted a parole hearing until she has served forty-four months in prison, that is, one-third of the aggregate of the maximum of the two sentences. *See also* 18 U.S.C. § 4205(h) (1976).[5]

■ It follows from the foregoing that the District of Columbia does not acquire the attributes of separate sovereignty by virtue of its being a party to the Interstate Agreement on Detainers. Although Article II of that agreement includes the District of Columbia (and, for that matter, the United States) within the definition of "state," that is merely a definitional device in which the legislature indulged as a matter of convenience and by no means transforms the District of Columbia into an actual state. Moreover, even if we were to assume that the District of Columbia is a separate sovereign for this purpose, Goode would still have no justifiable claim for a parole hearing under 28 C.F.R. § 2.31(a) (1978) for the simple and obvious reason that the existence of the D.C. armed robbery sentence is not remotely equivalent to a detainer lodged by another sovereign under the Interstate Agreement on Detainers. A detainer under that agreement, and generally, refers to a document filed on an untried indictment, information, or complaint. *See* 18 U.S.C., App. art. III (1976); D.C.Code § 24–701, art. III (1973). *See generally United States v. Mauro*, 436 U.S. 340, 349–61, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978).

■ Goode's equal protection claim, premised as it is on her misconceptions about the status of the District of Columbia, must fail for the reasons set out above. Goode pleads no instance of being treated differently than every other prisoner incarcerated for crimes against the United States. Her double jeopardy claim pivots

on her fear that she will be forced to serve her complete armed robbery sentence in addition to the minimum aggregate sentence, in effect, that she will receive no credit on that sentence for the one-third of it she will have served before reaching her parole eligibility date. She offers no basis whatsoever for this fear, and her claim in this regard is thus premature. We need only note here that it is well established that consecutive sentences for two completely distinct and separate offenses can constitutionally be imposed. *United States v. Ewell*, 383 U.S. 116, 124, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966). It is also elementary that parole eligibility is no assurance of release. *Peterson v. Rivers*, 121 U.S.App. D.C. 327, 328, 350 F.2d 457, 458 (1965) (per curiam).

■ We conclude that Goode's claims that her statutory and constitutional rights are being violated by the aggregation of her consecutive sentences for the purpose of determining parole eligibility are patently frivolous and without the requisite semblance of a foundation in law.[6] Accordingly, we deny her motion to appeal. It is

*So Ordered.*

Senior Circuit Judge Fahy, being of the view that the motion of Goode for leave to appeal *in forma pauperis* presents a non-frivolous issue for our consideration, would grant the motion for leave to appeal *in forma pauperis* and appoint counsel for her.

---

5. Had Goode's robbery sentence been imposed by a court of one of the fifty states she would now be eligible for parole on the narcotics sentence. This in no way means that she would be entitled to release, however. The federal authorities could decide not to grant her parole, and even if they did grant parole, she presumably would be transferred to a state institution prior to release.

6. Goode had the assistance of legal counsel in presenting her claims to the district court.