**UNITED STATES of America**

v.

**Joseph C. FRADY, Appellant.**

No. 79–1284.

United States Court of Appeals, District of Columbia Circuit.

June 8, 1979.

As Amended June 18, 1979.

On Suggestion for Rehearing En Banc Aug. 8, 1979.

As Amended Sept. 11, 1979.

Joseph C. Frady, pro se.

H. Lowell Brown, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., and John A. Terry, Asst. U.S. Atty., Washington, D.C., were on the pleadings for appellee.

Before FAHY, Senior Circuit Judge, and McGOWAN and WILKEY, Circuit Judges.

Opinion for the Court filed by FAHY, Senior Circuit Judge.

Dissenting opinion filed by WILKEY, Circuit Judge.

FAHY, Senior Circuit Judge:

The question presented is whether a certain change in a prison sentence after it had begun to be served placed appellant twice in jeopardy for the same offense. We hold that it did and, therefore, that the change must be set aside as inconsistent with the Double Jeopardy Clause of the Fifth Amendment.[1]

### History of the Case

The case first came before the courts in 1963. On November 7 of that year appellant Frady and a co-defendant, not a party to the present proceedings, were convicted of first degree murder (count one of the indictment) and of robbery (count three). On December 6, 1963, appellant was sentenced by the District Court on count one "to the punishment of death by electrocution".[2] Also on December 6, 1963, appellant was sentenced on count three to five to fifteen years.[3] The docket indicates that after the sentencing on December 6, appellant was remanded to the District of Columbia Jail. Several days later, on December 13, the District Court entered an order stating that "if an appeal from the judgments of conviction . . . be taken . . . the . . . sentence of death . . . heretofore imposed . . . shall be stayed . . . ." Notice of appeal was filed that day.

---

1. "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S.Const. amend. V.

2. The judgment went on to order that appellant be "taken to the District of Columbia Jail . . . and . . . on the 7th day of February A.D. 1964" electrocuted.

3. Specifically, the District Court on December 6, 1963, signed a "judgment and commitment" which stated, as to count three, "IT IS ADJUDGED that the defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of FIVE (5) YEARS TO FIFTEEN (15) YEARS." This "judgment and commitment" was filed December 10, 1963.

There followed in due course an appeal to this court and our decision of *Frady v. United States*,[4] affirming appellant's convictions for first degree murder and robbery. This court held, however, that appellant's death sentence had been erroneously imposed; it was set aside "with directions that . . . appellant be resentenced to life imprisonment on the verdict[ ] of guilty of first degree murder." 121 U.S.App.D.C. at 79, 348 F.2d at 85. As to the robbery, the sentence which had been imposed, as well as the conviction, were affirmed. 121 U.S.App.D.C. at 79 n.1, 348 F.2d at 85 n.1.

On remand the District Court, on June 18, 1965, pursuant to the mandate of this court, set aside the sentence of death and sentenced appellant to imprisonment for "his natural life" on count one, and added, but not pursuant to our mandate, "[t]he sentence of Five (5) Years to Fifteen (15) Years on count three, imposed on December 6, 1963, to run consecutively to the Life sentence on count one". The appellant was remanded again to the District of Columbia Jail.

Insofar as is relevant to this appeal the matter then lay dormant until June 19, 1978, when appellant filed *pro se* in the District Court a motion pursuant to Fed.R. Crim.P. 35 to vacate an illegal sentence.[5] The motion was denied the same day. Appellant's request for leave to file a notice of appeal, lodged in the District Court July 7, 1978, was denied as untimely. On August 22, 1978, appellant petitioned this court for leave to appeal on the ground that the consecutive robbery sentence was invalid as arising out of a single transaction. This court construed this petition as one to appeal *in forma pauperis* and denied it November 8, 1978, finding no merit in the ground stated, citing *United States v. Butler*, 149 U.S.App.D.C. 300, 462 F.2d 1195 (1972). Twelve days later appellant moved this court to reconsider its denial. In this motion appellant disclaimed a desire to appeal *in forma pauperis* and alleged that his

robbery sentence was illegal. He set forth that previously the robbery sentence had run concurrently and was illegally made to run consecutively after remand. This constituted, he stated, an illegal pyramiding of sentences.

Thereafter appellant paid the docket fee and this court allowed his appeal. In allowing the appeal we held that, in the circumstances of the case, the time within which a notice of appeal was required to be filed was governed by Fed.R.App.P. 4(a), rather than Rule 4(b), and that since the notice had been filed within the time limits set by Rule 4(a), it was timely.

During the course of the above proceedings the United States and the appellant, who, though still acting *pro se*, obviously has had legal assistance from some source, have been given and have fully utilized opportunities to brief their respective positions. In view of this, and the over-all situation we have described, we have invoked our Rule 11(e) and now decide the case under its procedural provisions, without oral argument.

### The Merits

The position of the United States is that the alteration of the robbery sentence constituted no increase in appellant's sentence, and, therefore, *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), is not applicable. We agree *Pearce* is not applicable, but for quite a different reason. In contending that the "sentence" was not increased, the United States considers appellant's "sentence" as a combination of the two separate sentences. Thus considered it is pointed out that the life sentence and the consecutive robbery sentence constitute a "sentence" of less severity than the original sentences which included the death sentence. This is true, of course, but the sentences were not imposed as one sentence. The punishment for each offense was separate; moreover, appellant

---

**4.** 121 U.S.App.D.C. 78, 348 F.2d 84 (en banc), *cert. denied*, 382 U.S. 909, 86 S.Ct. 247, 15 L.Ed.2d 160 (1965).

**5.** "The court may correct an illegal sentence at any time . . . ." Fed.R.Crim.P. 35.

does not contend that he was twice placed in jeopardy for the offense of first degree murder. His position is that after the remand the alteration of the robbery sentence from concurrent [6] with the death sentence to consecutive to the substituted life sentence, placed him twice in jeopardy for the robbery offense. In *Pearce* the situation was quite different. The Supreme Court stated the question before it as follows:

> When at the behest of the defendant a criminal conviction has been set aside and a new trial ordered, to what extend does the Constitution limit the imposition of a harsher sentence after conviction upon retrial? That is the question presented by these two cases.

395 U.S. at 713, 89 S.Ct. at 2074.

In the case before us now there was no setting aside of a conviction at the behest of appellant, followed by retrial, reconviction, and resentence carrying a heavier punishment than that imposed before the appeal. In *Pearce*, where the above events had occurred, they gave rise to the question whether the harsher punishment was traceable to the fact that the accused had exercised his right of appeal. This was the problem dealt with in *Pearce*. Having no comparable situation before us in this case we consider the question raised by the factual situation which is before us: there was no single combined sentence imposed in this case either originally or after the remand, covering in one sentence the penalties for murder and robbery. In each instance the sentence for the murder and that for the robbery were imposed for each crime alone. The sentence of death for the murder was decreased by this court's decision to life

imprisonment. No question is before us by reason of this change in the punishment for the murder. The sentence for the robbery originally entered was altered on the remand by making it consecutive to the sentence for the murder.[7] This does raise the question whether the alteration increased or made more severe the previously imposed sentence for the robbery, thereby placing appellant twice in jeopardy for that offense. We now turn to consider that question.

We agree with appellant that the original sentence of 5 to 15 years for robbery was concurrent with the sentence of death for the murder. As this court held in *Borum v. United States*, 133 U.S.App.D.C. 147, 154, 409 F.2d 433, 440 (1967), *cert. denied*, 395 U.S. 916, 89 S.Ct. 1765, 23 L.Ed.2d 230 (1969), "[A]bsent a specification of consecutiveness, multiple sentences operate concurrently," citing a number of supporting decisions.[8] To the same effect see *Schultz v. United States*, 384 F.2d 374 (5th Cir. 1967). In our case of *Tatum v. United States*, 114 U.S.App.D.C. 49, 50, 310 F.2d 854, 855 (1962), we had stated the matter as follows:

> If appellant's first sentence was lawful a second sentence could not lawfully be imposed which increased it or made it more severe, once he had commenced serving confinement under it.

Moreover,

> The law is well settled . . . that a sentence in all respects legal cannot be increased after service has begun. "[T]he Constitution was designed as much to prevent the criminal from being twice

---

6. See text accompanying note 8, *infra*.

7. That it would have been anomalous for the District Court to make the robbery sentence consecutive to the death sentence does not obviate the fact that as imposed in 1963 the robbery sentence was concurrent. Indeed, since it was not consecutive to any sentence its effect would have been the same as if concurrent even were the term "concurrent" not used to describe it.

8. By Act of Congress of July 29, 1970 (Pub.L. No. 91–358, § 210(a), Title II, 84 Stat. 610), enacted subsequent to the occurrences relevant

to the present case, the law in this jurisdiction has been changed. Our statute, codified as D.C.Code Title 23, § 112, now covers the matter as follows:

> A sentence imposed on a person for conviction of an offense shall, unless the court imposing such sentence expressly provides otherwise, run consecutively to any other sentence imposed on such person for conviction of an offense, whether or not the offense (1) arises out of another transaction, or (2) arises out of the same transaction and requires proof of a fact which the other does not.

punished for the same offense as from being twice tried for it."

*Borum v. United States, supra,* 133 U.S. App.D.C. at 154, 409 F.2d at 440 (footnotes omitted), *quoting Ex parte Lange,* 85 U.S. (18 Wall.) 163, 173, 21 L.Ed. 872 (1873).

The original sentence for robbery was legal in all respects, and its service had begun before it was changed from concurrent to consecutive. Thus, when appellant was sentenced to death on December 6, 1963, on count one and to imprisonment on count three he was remanded to the District of Columbia Jail and on the same day was committed to the custody of the Attorney General or his authorized representative to begin serving the five to fifteen year robbery sentence. This imprisonment constituted service under that sentence:

> If any . . . person shall be committed to a jail or other place of detention to await transportation to the place at which his sentence is to be served, his sentence shall commence to run from the date on which he is received at such jail or other place of detention.

18 U.S.C. § 3568 (1976).

Had the sentence of death been carried out, of course it would have been a matter of indifference whether the robbery sentence were concurrent or consecutive; but when the death sentence was replaced by the life sentence after appellant had begun to serve the robbery sentence, the change in the latter to consecutive to the life sentence had the effect, if allowed to stand of impermissibly extending the time appellant would be required to be imprisoned due to the robbery conviction.

Appellant will be eligible for parole under the life sentence after serving [20] years (D.C.Code Title 22, § 2404); during this period of [20] years he would complete a concurrent robbery sentence of five to fifteen years, but were that sentence to remain as consecutive to the life sentence he would be required to remain in prison, additionally, for at least the minimum period necessary to be served under the robbery sentence before being eligible for parole. This alteration in the robbery sentence thus increased its severity and would have the effect, as has been pointed out, of increasing the time appellant would be liable to be imprisoned for the robbery.[9] The alteration accordingly is in violation of the Double Jeopardy Clause. The robbery sentence of five to fifteen years must run concurrently with the life sentence to which it is related, rather than consecutively thereto. The case is remanded to the District Court for entry of an appropriate order to that effect.

*It is so ordered.*

WILKEY, Circuit Judge, dissenting:

At a superficial first glance one is tempted to say that the convicted appellant here had no ground for complaint when his sentences of death plus five to fifteen years were changed to life imprisonment plus five to fifteen years, even though the resentencing of five to fifteen years was made consecutive to the life sentence instead of being automatically concurrent with the death sentence. One would assume that the appellant prefers life plus any term of years to a death sentence, and therefore would have no rightful complaint under the double jeopardy clause that the resentencing imposed a more severe penalty upon him. But the careful analysis of Judge Fahy, shows that indeed they were two separate offenses, there were two separate sentences the first time, there were two separate sentences at the resentencing; so the sentence for robbery of five to fifteen years was *increased* or made more severe because it was made *consecutive* instead of being *concurrent* as the law made it the first time.

Nevertheless, I suggest that an even more careful look will show that the first superficial impression was correct; whether considered with the sentences combined or

---

**9.** Should appellant continue serving the life sentence until his death, consecutiveness of the robbery sentence would never become operative, but the added severity of the sentence sought to be imposed has given rise to a case or controversy appropriate for judicial disposition at this time, for it is the imposition of the increase or severity of the sentence which has subjected him to being twice put in jeopardy for the robbery offense.

sentences separate, appellant's sentence the second time is lighter or no heavier than the first, and therefore is not subject to challenge under the double jeopardy clause.

The Government argues that the second sentence was *not* a more severe sentence than the first, because the *sentence as a whole was reduced* from death plus a concurrent sentence of five to fifteen years to life imprisonment plus a consecutive sentence of five to fifteen years. The Government's position is valid if, but only if, it is proper to link the two sentences together. The majority rejects this argument, saying:

> There was no single combined sentence imposed in this case either originally or after the remand, covering in one sentence the penalties for murder and robbery. In each instance the sentence for the murder and that for the robbery were imposed for each crime alone. . . .
>
> The sentence for the robbery originally entered was altered on the remand by making it consecutive to the sentence for the murder. This does raise the question whether the alteration increased or made more severe the previously imposed sentence for the robbery, thereby placing appellant twice in jeopardy for that offense. (197 U.S.App.D.C. ——, 607 F.2d 386)

So the majority opinion rejects the theory of linkage between the two separate sentences. Now, please observe closely, *how* does the majority opinion show that the five-to-fifteen-year consecutive sentence became *greater than* the five-to-fifteen-year concurrent sentence? Only *by linking* the five-to-fifteen-year sentence with the other separate sentence.

> [W]hen the death sentence was replaced by the life sentence after appellant had begun to serve the robbery sentence, the change in the latter to consecutive to the life sentence had the effect, if allowed to stand, of impermissibly extending the time appellant would be required to be imprisoned due to the robbery conviction.
>
> Appellant will be eligible for parole under the life sentence after serving twenty years (D.C.Code Title 22, § 2404);

during this period of twenty years he would complete a concurrent robbery sentence of five to fifteen years, but were that sentence to remain as consecutive to the life sentence he would be required to remain in prison, additionally, for at least the minimum period necessary to be served under the robbery sentence before being eligible for parole. This alteration in the robbery sentence thus increased its severity and would have the effect, as has been pointed out, of increasing the time appellant would be liable to be imprisoned for the robbery. (197 U.S.App.D.C. ——, 607 F.2d 387)

The majority thus demonstrates that the five-to-fifteen-year consecutive sentence becomes greater than the previous five-to-fifteen-year concurrent sentence *only because of its linkage* to the other "separate" sentence for murder. This is precisely the same linkage which the Government argues should be taken into consideration in assessing whether the appellant's sentence was increased or not on the remand.

On the other hand, if each sentence must stand on its own bottom, without being added to or subtracted from or considered with the other separate sentence, then the five-to-fifteen-year sentence remains the same whether it is denominated consecutive or concurrent. Denomination of a sentence as concurrent or consecutive is meaningless in its effect on the prisoner until it is considered in connection with another sentence.

The consecutive sentence *only becomes greater* than the concurrent sentence if it is linked to the other separate sentence of death or life imprisonment. If it is logical to have a linkage, the linkage must be applied at both times we consider it. If we now must consider the five-to-fifteen-year robbery sentence as linked to the sentence for murder, whatever value it is, as the majority opinion so holds, then it is logical to consider the five-to-fifteen-year robbery sentence of the original sentencing in its relation to the original death sentence for murder.

It is clear that if each *combination* of sentences is compared, then obviously life imprisonment with a consecutive five-to-fif-

teen-year sentence is *less than* death with a concurrent five-to-fifteen-year sentence. If the sentences on each offense are considered absolutely separately, then the five-to-fifteen concurrent or consecutive sentences are equivalent; it is only by bringing in the other separate sentence for murder, previously ruled out in the majority opinion, that the consecutive sentence becomes greater in its effect than the concurrent.[1]

The majority opinion cannot have it both ways. It cannot initially reject the Government's argument linking the two separate sentences and valuing them as a combination on both the original sentencing and the remand, and then the majority opinion employ that same linkage rationale to determine that indeed the resentencing became harsher *because of the linkage* between the two separate sentences. The majority cannot logically say that the first five-to-fifteen-year robbery sentence was meaningless *because it was linked* to the murder death sentence, and *then say* that the five-to-fifteen-year consecutive robbery sentence is harsher *because it is linked* to the murder life imprisonment sentence.

I respectfully dissent.

## ON SUGGESTION FOR REHEARING EN BANC

### Decided Without Oral Argument

MacKINNON, Circuit Judge, (Statement in support of his suggestion for rehearing *en banc*):

Following Frady's conviction of first degree murder and robbery the trial judge

sentenced him on December 6, 1963 "to the punishment of death by electrocution" on the first degree murder count and to imprisonment for five to fifteen years on the robbery count. Tr., December 6, 1963, 5. The judgment of the court set the "7th day of February A.D. 1964" as the date for electrocution. The nature of the sentences did not call for adjudging the sentences to be concurrent or consecutive and no such specification was added. On December 13th the trial judge ordered a stay of the "sentence of death" in the event that an appeal be taken from the judgments of conviction.

Frady appealed and the Court of Appeals en banc (1) affirmed the robbery conviction unanimously, (2) affirmed the first degree murder conviction with one Judge dissenting, and (3) decided that the death penalty had been erroneously imposed and ordered resentencing to life imprisonment on the murder count. *Frady v. United States*, 121 U.S.App.D.C. 78, 348 F.2d 84 (D.C.Cir.) (*en banc*), cert. denied 382 U.S. 909, 86 S.Ct. 247, 15 L.Ed.2d 160 (1965).

On June 18, 1965, pursuant to the remand, the District Court sentenced appellant to imprisonment for "life" on the first degree murder count, and then added that the sentence of five (5) years to fifteen (15) years on count three (robbery), imposed on December 6, 1963, was "to run consecutively to the [life] sentence imposed under count 1 [first degree murder]."[1]

---

1. The first five-to-fifteen-year sentence was never denominated as either "concurrent" or "consecutive" by the trial judge at sentencing. He would have sounded somewhat foolish if he had imposed a death sentence, and then a *concurrent* five-to-fifteen-year sentence for the other crime. He would have sounded even more bizarre if he had followed the death sentence by a command to the prisoner to serve five to fifteen years *consecutive* to the execution of the death sentence.

This illustrates the very practical point that, where a death sentence is involved, sentences for all other crimes will normally *not* be specified as either concurrent or consecutive, and thus under the rule be deemed concurrent. If the death sentence is voided and life imprison-

ment imposed, then under the majority's opinion here it would always be *impossible* to make any of the other sentences consecutive.

1. "THE COURT: It is the judgment of this Court that you, Joseph C. Frady, by virtue of the commutation of sentence granted by the United States Court of Appeals for the District of Columbia, on Count 1 be imprisoned in a place of confinement to be designated by the Attorney General of the United States or his authorized representative for life under the provisions of Title 22, Section 2404, D.C. Code, 1961 Edition, 1965 Supplement;

That on Count 3, you be imprisoned for a term of not less than five years and not more than 15 years, the sentence under Count 3 to

While Frady's counsel immediately questioned the "consecutive" sentence[2] it was not until June 19, 1978 that Frady filed a motion to vacate the allegedly illegal sentence. After initially making another contention, which was denied, the appellant eventually alleged that the sentencing court had acted illegally on June 18, 1965 when it adjudged that the five to fifteen year sentence on the robbery count should run *consecutively* to the life sentence which the court had just imposed pursuant to the remand following the appeal.

The majority opinion now concludes that making the sentence on the robbery count run consecutively to the life sentence for murder amounted to a "violation of the Double Jeopardy Clause."[3] It reaches this conclusion by *assuming* that the court in 1965 when it imposed the life sentence "altered" the "sentence for the robbery [as] originally entered," (Maj. op. at —— of 197 U.S.App.D.C., 386 of 607 F.2d) because "as imposed in 1963 the robbery sentence was concurrent." Maj. op. at —— of 197 U.S.App.D.C., n.7, 386 n.7, of 607 F.2d n.7. The majority opinion claims its conclusion is supported by cases holding that " 'absent a specification of consecutiveness, multiple sentences operated concurrently,'." *Borum v. U. S.,* 133 U.S.App.D.C. 147, 409 F.2d 433, 440 (D.C.Cir.1967), *cert. denied,* 395 U.S. 916, 89 S.Ct. 1765, 23 L.Ed.2d 230 (1969), *quoted* at Maj. op., at —— of 197 U.S.App. D.C., 386 of 607 F.2d. "If the sequence

[of sentences] is not adequately specified, the sentences must be deemed to run concurrently." *Henley v. Heritage,* 337 F.2d 847, 848 (5th Cir. 1964); cf., *U. S. v. Daugherty,* 269 U.S. 360, 363, 46 S.Ct. 348, 70 L.Ed.2d 310 (1926). This was the decisional law with respect to multiple prison terms before Congress in 1970 reversed the presumption by providing that multiple sentences in the District of Columbia shall run consecutively "unless the court imposing such sentence expressly provides otherwise . . . ."[4] The cases relied upon, however, all involved multiple sentences to different *terms of years,* and none involved cases where a defendant was sentenced to a term of years and to a *death sentence.* It thus cannot be said here that there was an inadequate specification because when a death sentence is imposed with a prison sentence the question of consecutiveness or concurrence does not arise. In the circumstances that are here present, as the sentencing judge remarked in 1965, when the sentences were imposed, it would have been "a stupid thing to do" in 1963 "when I originally sentenced them under the robbery count. . . . "[5] The sentencing judge was correct—it would have been senseless when adjudging a death sentence to add that the 5 to 15 year term of imprisonment would run "*consecutively to the death sentence.*" The reason it would have been stupid is because a death sentence does not *run* for any period of time. The

run consecutively to the sentence imposed under Count 1."
Tr. June 18, 1965, 8–9.

2. "MR. JOHNSON: I might suggest to Your Honor, I think Your Honor made one error in the sentencing. I think Your Honor gave them a life sentence and then resentenced them under the robbery count. I don't think Your Honor has the authority to resentence them under the robbery count.
THE COURT: Well, I had already sentenced them under the robbery count.
MR. JOHNSON: Yes, sir.
THE COURT: Now, it is true that when I originally sentenced them under the robbery count, I did not provide that it was consecutive.
MR. JOHNSON: Yes, sir.
THE COURT: But it would seem to me a stupid thing to do a useless . . . thing

to do to add a five to fifteen year penalty consecutive to the death penalty.
MR. JOHNSON: Yes, sir.
THE COURT: Only a higher diety—or a high deity could carry out that sentence, and I have thought about this matter. Therefore I do not now deem the consecutive sentence on robbery to be an improper or illegal sentence."
Tr. June 18, 1965, 10.

3. "[N]or shall any person be subject for the same offense to be twice put in jeopardy or life or limb . . . " Fifth Amendment, U.S. Constitution.

4. P.L. No. 91–358 of July 29, 1970, § 210(a), Title II, 84 Stat. 610; 23 D.C.Code § 112.

5. Tr. June 18, 1965, 10, *quoted* at n.2, *supra.*

very nature of a sentence to death does not call into play a situation which would suggest a necessity for any court to designate whether the prison term should be consecutive or concurrent. Once the death sentence is carried out the service of any prison term would be impossible. It was not until the life sentence was adjudged to replace the death sentence, involving as it did some time considerations for possible parole, etc., that the consecutive or concurrent nature of the sentence first became a sentencing problem. At that time the Court adjudged that the 5 to 15 year prison term was to run consecutively to the life term.

The effect was to make the two sentences consecutive. While the mechanism the Court employed made the 5 to 15 year term consecutive to the life sentence, it would not have created any different situation, or altered Frady's rights in any respect, had the Court stated that the life sentence was to run consecutively to the 5 to 15 year term. The effect of what the Court stated was that the life term must be served first as a separate sentence. Whether one precedes the other, or vice versa, is immaterial. *Goode v. Markley, Warden,* 195 U.S.App. D.C. 391, 394–395, 603 F.2d 973, 976–977 (1979) ("The U.S. Parole Commission . . . aggregate[s] consecutive sentences for the purpose of determining parole eligibility"). Actually the life sentence was partially consecutive to the prison term, because the prison term was the only sentence involving time that existed between December 6, 1963, when the death sentence and the prison term were first adjudged, and June 18, 1965, when the life term was imposed and the consecutive nature of the prison term was added. The majority are thus straining as gnats in making out a double jeopardy violation on the facts here present.

The prior cases relied upon are also not in point because they all involved multiple sentences to terms of years in which it would be valid to presume that something had been omitted in that a sentencing judge would normally specify the relationship of the two sentences. However, the factual situation which exists when a prison term is adjudged in connection with a death sentence creates a different factual situation. Nothing is there omitted when the sentences are not termed consecutive or concurrent because in such circumstances no one would expect the Court to adjudge the prison term to be consecutive. And since nothing was omitted from the sentence the factual situation does not create an opportunity for the presumption of concurrence to operate. If the factual situation would sustain any presumption it would be a presumption of consecutive sentences because by imposing a death sentence *and* up to the maximum prison term that the statute allowed (31 Stat. 1322), the Court was indicating it wanted the defendant to suffer the maximum possible punishment—and that would be consecutive sentences if that ever became possible with one sentence being a death sentence. It was thus erroneous for the majority to hold that the presumption of concurrent sentences applied to the 1963 sentences.

Moreover, the very nature of the two sentences implicitly indicate that they were *consecutive sentences.* The time that Frady served in custody after the sentences were imposed was immediately charged to his robbery sentence because it was the only *prison term* that he was serving, and if his appeal took 5 years he would have served the minimum amount adjudged. If he was then executed, the sentences would have operated *consecutively* and the same would be true if his murder conviction was commuted after five years. The basic assumption of the majority opinion, of original concurrent sentences, is thus in error—on the facts and on the law. The original sentences created absolutely no situation within which the presumption would operate.

For the reasons hereinbefore set forth, I vote *sua sponte* to rehear the case *en banc.*