447 P.2d 560

**The STATE of Arizona, Appellee,**

**v.**

**Oscar William FORTESON, Jr., Appellant.**

**The STATE of Arizona, Appellant,**

**v.**

**Oscar William FORTESON, Jr., Appellee.**

**No. 2 CA–CR 132.**

Court of Appeals of Arizona.

Nov. 26, 1968.

Rehearing Denied Dec. 20, 1968.

Review Denied Jan. 21, 1969.

Gary K. Nelson, Atty. Gen., Darrell F. Smith, Former Atty. Gen., Carl Waag, Asst. Atty. Gen., for The State of Arizona.

Leon Thikoll, Tucson, for Oscar William Forteson, Jr.

MOLLOY, Judge.

We have here two appeals in a single criminal action. The defendant has appealed from a conviction of possession of a "pistol" by one who has been convicted of a "crime of violence," as those terms are defined in A.R.S. § 13-919, and the State has appealed from the dismissal of a count in the criminal complaint charging burglary.

We dispose of the State's appeal first. The legal problem presented is whether a previous acquittal as to a robbery charge arising out of the same occurrences upon which the burglary charge is predicated bars the subsequent burglary prosecution. The parties are not in dispute as to the basic facts giving rise to this question. On February 1, 1964, a gasoline service station in Tucson, Arizona, was robbed by two masked men. The robbers entered the station at about 1:15 a. m., with stocking masks on their faces. One of the robbers, allegedly the defendant, used a snub-nosed hammerless revolver to threaten the occupants of the service station to effectuate

the robbery. The defendant was apprehended approximately twenty-five minutes after the robbery, in the vicinity of the service station, and in possession of a snub-nosed hammerless revolver.

These events have precipitated substantial litigation. The defendant was charged with robbery, convicted thereof, and his conviction was reversed on appeal. State v. Forteson, 102 Ariz. 554, 434 P.2d 640 (1967). On retrial, the defendant was acquitted.

Subsequently, the defendant was charged with the two offenses with which we are here concerned. At a hearing on the motion to quash the burglary count, the trial court first denied the motion and then the following exchange between counsel and court ensued:

"MR. THIKOLL [defendant's counsel]: * * * I will offer to stipulate this stipulation and hope that it is accepted and that is that the overwhelming weight of the evidence as presented at the robbery trial, and retrial of the robbery was that Oscar William Forteson, Jr., if it was Forteson then, entered the service station with the intent to rob the occupants thereof.

"MR. AUGUSTINE: Absolutely no doubt in my mind that he entered the service station to rob the occupants thereof because he entered with a pistol, a bulky trench coat and a stocking mask. There is no doubt in my mind that he entered—

"THE COURT: With that stipulation the Court will reverse its ruling and the Motion to Quash is granted."

■ The only justification offered by the defendant for this ruling of the trial court is a double jeopardy one. We are asked by the defendant to overrule State v. Green, 98 Ariz. 254, 403 P.2d 809 (1965), and State v. Hutton, 87 Ariz. 176, 349 P.2d

187 (1960), which hold that, under our burglary statute, A.R.S. § 13–302, subsec. A,[1] there are two crimes committed when a person enters a building with intent to commit a felony and thereafter commits that felony and that the violator can be convicted and punished for both offenses.

■ The rationale of the *Green* decision is that one who commits one crime with intent to commit another and who, in fact, thereafter does commit the other crime, should be punished more severely than one who commits the first crime but has a change of heart before carrying out his original plan.

Construing analogous statutes, Irby v. United States, CADC, 390 F.2d 432 (1967), has reached the same conclusion. *Irby* rationalizes this result on the basis that there are separate interests protected by a housebreaking and a robbery statute, the one being designed to protect property and the other to protect persons. (390 F.2d 433.) The defendant asks this court to follow the dissenting opinion in *Irby* (390 F.2d 439).

We neither have the authority nor the inclination to overrule State v. Green and State v. Hutton, supra. We are impressed by the *ratio decidendi* of the *Green* and *Irby* decisions. However, we believe the order quashing the burglary charge can be defended under the doctrine of res judicata.

■ On appeal from a judgment, it is our duty as an appellate court to affirm, if we can do so, on any grounds that were within the issues framed below. Though the motion to quash did not place a res judicata label upon any of its arguments, it is our view that the concepts of double jeopardy and res judicata are sufficiently related so that it would be improper to hold the defense of res judicata waived,

---

1. "A. A person entering a building, dwelling house, office, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, garage, tent, vessel, railroad car or motor vehicle, trailer or semitrailer, with intent to commit grand or petty theft, or any felony, and a person entering an outhouse or other building not enumerated in this section with intent to commit a felony, is guilty of burglary." 5 A.R.S. § 13–302, subsec. A, as amended.

when a double jeopardy defense is raised. That the trial court may have been influenced by res judicata considerations is indicated by the record above quoted and by a collateral estoppel argument made by defense counsel at the time of argument on the motion to quash.[2]

■■■ That the doctrine of collateral estoppel, an adjunct of the law of res judicata, is applicable in criminal actions, both for and against the defendant, is generally accepted. 21 Am.Jur.2d Criminal Law § 217, at 257–58; Annots., 9 A.L.R. 3d 203 and 147 A.L.R. 991. The doctrine has been embraced, in a criminal case, by our Supreme Court:

"In accordance with the general rule, as followed on many occasions by this Court, the judgment in an action has the following effect in a subsequent action between the same parties: where the causes of action are the same, the prior judgment is conclusive, under the doctrine of res judicata, as to all issues which were or might have been litigated in the first action; *where the causes of action are different, the judgment in the first action is conclusive, under the doctrine of res judicata or collateral estoppel, only as to such issues as were actually litigated and adjudicated in the first action.* [citations omitted]

"Here, the instant action is between the same parties as were involved in the prior action in which defendant was acquitted, but relates to an offense committed on a separate occasion, and, consequently is for a different cause of action. Accordingly, the prior acquittal operates as a bar only as to issues actually litigated

and determined in the first action. As the issue determined by the jury in the first action was whether defendant was guilty of selling narcotics illegally on the date there in issue, *the general verdict of acquittal in that action would seem to bar introduction in the present action of any evidence tending to show the criminality of the earlier alleged sale."* (Emphasis added) State v. Little, 87 Ariz. 295, 304, 350 P.2d 756, 762, 86 A.L.R.2d 1120 (1960).

There are obvious distinctions between the conclusory nature of a judgment of acquittal in a criminal action and a judgment in a civil cause. In the latter case, there has been a decision rendered on the basis of the preponderance of the evidence and more often the issues of fact have been separately resolved, sometimes by answers to interrogatories, or by findings of fact by the court, so that the specific facts adjudicated are ascertainable.

■■ Contrariwise, in a criminal action, almost always only a general verdict is reached and an acquittal is to be rendered in the event that the finder of fact is not satisfied beyond a reasonable doubt as to any one of the several elements of the particular crime charged. In any criminal prosecution, it is always possible that an acquittal was based upon nothing more than a failure to satisfy a jury that the prosecution was filed in the proper county. Consequently, before giving a judgment of acquittal in a criminal action binding effect in a subsequent criminal or civil action, the court must be extremely careful that there has in fact been an adjudication on the particular factual issue or issues which are common to the two causes. Courts have

---

2. Defendant's counsel argued:
"Here, say, you would notice that the Jury found in favor of the State on all of the issues raised. Here we have an instance where the robbery trial was held first and the Jury by coming back with a verdict of not guilty decided various things. We don't know exactly what they decided. *They could have decided it wasn't this Defendant that was present, or if it was this Defendant it wasn't a robbery, it was just a polite taking without violation of the law. Well those are the only two possible things the Jury could have decided. And by deciding these things they just about decided the same facts which will be presented in the burglary.* So, I submit that the burglary charge now is not well founded." (Emphasis added)

been most reluctant to hold that a previous acquittal in a criminal action, in which the principal defense was mistake of identity, is binding in a subsequent criminal action arising out of the same series of occurrences which gave rise to the first action. See, e.g., People v. Ulrich, 30 Ill.2d 94, 195 N.E. 2d 180 (1963); State v. Robinson, 262 Minn. 79, 114 N.W.2d 737 (1962), cert. denied, 371 U.S. 815, 83 S.Ct. 26, 9 L.Ed.2d 56 (1962); State v. Hoag, 21 N.J. 496, 122 A.2d 628 (1956), aff'd, 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958); and State v. Barton, 5 Wash.2d 234, 105 P.2d 63 (1940). The rationale of these decisions is that, if there is any basis of explanation of the prior acquittal other than adjudication on a factual issue which is critical to the second prosecution, the doctrine of collateral estoppel should be rejected.

But, when it is clear that the prior acquittal could only have been based upon a factual determination which, if correct, would be fatal to the subsequent prosecution, then the res judicata defense becomes controlling. See, e. g., United States v. Kramer, 289 F.2d 909 (2d Cir. 1961); and People v. Grzeszczak, 77 Misc. 202, 137 N.Y. S. 538 (1912).

 The facts, as stated by the State, and concurred in by the defendant, present an uncomplicated picture insofar as the previous acquittal is concerned. Inasmuch as the entry was made by armed, masked men, and a robbery actually occurred immediately thereafter, it is almost inconceivable to argue that there could have been an abandonment of the intent to rob after the entry into the service station, so that the perpetrators could be guilty of burglary but not of robbery. As in *Kramer, supra:*

"The issue for the jury was not whether 'jobs' had been done but by whom." 289 F.2d 914.

If there is any other conceivable reason for the acquittal of the defendant, other than that he was not one of the masked intruders, it is not suggested by this record.[3] On appeal, it is our duty to presume that the trial court acted properly, State v. Saiz, 3 Ariz.App. 223, 413 P.2d 282 (1966), and accordingly, we affirm the judgment dismissing the burglary count.

The defendant has presented six grounds for reversal as to his conviction for possession of a pistol. We consider them *seriatim.*

The defendant contends that it was error to deny a motion to suppress as to the revolver taken from the defendant's possession. As indicated above, there is no question but what the robbery occurred on the night in question. A police radio broadcast gave a physical description which superficially fitted the defendant. The crime occurred in the early morning hours and approximately twenty-five minutes after the alarm, a patrolman saw the defendant walking two blocks from the scene of the crime. When stopped for questioning, the defendant stated that he was proceeding to his home, but, when he stated his address, it was apparent to the officer that the defendant had been walking in the opposite direction from his home.

At this point, the officer asked the defendant if he would accompany him back to the service station; the defendant acceded to this request. Before permitting the defendant in his patrol car, the officer made a routine search of the defendant's person. The officer had previously noted a bulge in the defendant's waistband, and when the search was made, the bulge proved to be a loaded revolver, which matched the description of the weapon used in the robbery. A formal arrest of the defendant was not

---

3. At time of oral argument in this court, the State's attorney was queried from the bench as to the identity of the factual issue in the two prosecutions and the following colloquy ensued:
"Again, it is just an identity question?

"In essence that is correct, your Honor.
"And you want another crack at that issue?
"Yes, sir."

made until he had been returned to the service station.

▮▮▮ Under these circumstances, we believe the officer's conduct was reasonable and within the permissible "stop and frisk" limits of Terry v. State of Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The defendant complains that the State was permitted to offer in evidence fingerprints taken when the defendant was arrested on a disorderly conduct charge in 1958. The defendant was charged in the information with having been convicted of burglary in California in 1959. In his trial on the original robbery charge, the defendant had admitted this previous conviction. In this trial, the State first attempted to prove this necessary element of the charge by introducing this admission through the court reporter. Though the defendant had been represented in the previous trial by the same counsel who represented him at this action, objection was made by this counsel to the introduction of these admissions on the grounds that there was no showing the defendant in the other case was the same person who was on trial in this action.

The court reporter was unable to identify the defendant as being the same person, and a major portion of the remainder of this two-day trial was consumed in attempting to prove the prior conviction. The method used by the State was to establish that this defendant's fingerprints had been taken by the Tucson Police Department in 1958. In the process, it was disclosed that there had been an arrest of the defendant at that time. These prints were introduced in evidence and a fingerprint expert identified the fingerprints taken of the defendant in 1958 as matching the fingerprints which accompanied the authenticated record of the conviction had in California in 1959.

In introducing the record of the 1958 arrest, the prosecution offered to keep out of evidence the reverse of the fingerprint card which showed the 1958 arrest had been for disorderly conduct. The defendant preferred to have the record show the arrest was made for this relatively minor offense.

The manner of proof obviated presenting to the jury any information pertaining to the robbery of the service station.

▮▮▮ Our Supreme Court has taken the view that the mere identity of names is not sufficient to show actual identity of person and that, if the State is to carry its burden, it must show more. State v. Pennye, 102 Ariz. 207, 427 P.2d 525 (1967). In State v. Norgard, 6 Ariz.App. 36, 40, 429 P.2d 670, 674 (1967), this court held that, in meeting the burden of proof cast upon it, " * * * the State is entitled to go to any reasonable source of evidence * * *.'" Though the method taken here was somewhat awkward, counsel for the State avowed that he had no other ready means of establishing the defendant's identity, other than subpoenaing the defendant's counsel, which he appeared to consider improper. We do not see in this record any deliberate attempt on the State's part to prejudice the defendant but only to offer what it considered to be the most available evidence. *Norgard* permits this to be done.

▮▮▮ Moreover, even were this to be considered error, in the particular circumstances of this case, we would refuse to reverse because of lack of prejudice. We do not believe that it would be probable that the jury's verdict would have been any different if the jury had not learned that the defendant had been arrested, some six years prior to the offense charged, for disorderly conduct. State v. Brooks, 103 Ariz. 472, 445 P.2d 831 (1968); State v. Dutton, 83 Ariz. 193, 200, 318 P.2d 667, 671 (1957); and see People v. Stinson, 214 Cal.App.2d 476, 482, 29 Cal.Rptr. 695, 699 (1963), and many cases cited therein.

▮▮▮ The defendant complains that the court did not give an adequate instruction as to the limited use to be made by the jury of the evidence pertaining to the prior conviction. The State requested such an instruction, and the instruction was modified in accordance with the desires of the defendant's counsel. We hold that the defendant is in no position to complain of the adequacy of the instruction. See Rule 51

(a), Rules of Civil Procedure, 16 A.R.S.; and State v. Hernandez, 7 Ariz.App. 200, 437 P.2d 952 (1968).

 The defendant complains that, in sentencing the defendant, the defendant was entitled as a matter of law to credit for time served in the penitentiary on his robbery conviction which was subsequently reversed. At the time of judgment of conviction on the possession of a pistol charge, the defendant was placed on probation, and was afterwards sentenced to a term of four to five years, commencing as of the date of revocation of probation. The defendant has not called the attention of this court to any statute or decision making it mandatory for a sentencing court to give credit for time served under the circumstances presented here. We see no abuse of discretion nor violation of law.

 The defendant lastly complains of the denial of a "bifurcated" trial, contending there should have been separate presentations to the jury of the issues of possession and prior conviction so that, when the jury was trying the first issue, it would not be biased by the charge of a prior conviction. The defendant has cited no authority in support of his contention and we are not inclined to reverse for this reason. As to prosecution under comparable statutes, there is authority that a rule of criminal procedure, requiring a bifurcated trial when previous offenses are charged to increase the possible penalty, has no application. People v. Schunke, 47 Cal.App.2d 542, 118 P.2d 314 (1941); and People v. Oppenheimer, 156 Cal. 733, 106 P. 74 (1909).

Even by the procedure suggested, it would be difficult to keep a jury ignorant of this charge. Jurors would not usually be so naive as to believe that it is against the law in and of itself to possess a pistol. Moreover, some of those who thought this to be the law might rebel against convicting anyone of a crime they would consider oppressive. Hence, the splitting of the trial, as suggested by the defendant, would ordinarily not achieve a completely objective trial on the possession issue, and it would create one more factor of complexity to add to the possibilities of error which already permeate our criminal practice.

Judgment affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.