806 P.2d 861

**STATE of Arizona, Appellee,**

v.

**William Vera NUNEZ, Appellant.**

**No. CR–89–0306–PR.**

Supreme Court of Arizona,
En Banc.

Feb. 21, 1991.

Grant Woods, Atty. Gen. by Paul J. McMurdie and Jack Roberts, Asst. Attys. Gen., Phoenix, for appellee.

Jim D. Himelic, P.C. by Jim D. Himelic, Tucson, for appellant.

OPINION

MOELLER, Justice.

STATEMENT OF THE CASE

At defendant's third trial, a jury convicted William Vera Nunez (defendant) of negligent homicide. He appealed, contending that the trial court erred in denying his motion for acquittal, in instructing the

jury, and in refusing a *Willits* instruction.[1] The court of appeals reversed, holding that one of the jury instructions and the prosecutor's argument based on that instruction was error. The court rejected defendant's contention that he was entitled to a *Willits* instruction. Although the court remanded the case for a new trial, it did not address the merits of defendant's motion for acquittal.

We granted the state's petition for review on the issue of whether the challenged jury instruction was reversible error. *See* Rule 31.19, Ariz.R.Crim.P., 17 A.R.S. Recognizing the need to address the motion for acquittal regardless of whether a new trial was necessary, we requested supplemental briefs on that point. Following oral argument, we again requested supplemental briefs on the issue of collateral estoppel. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 12–120.24. We affirm defendant's conviction and vacate that part of the court of appeals' opinion designated "Double Jeopardy and Collateral Estoppel."

## ISSUES PRESENTED

1. Whether the trial court's jury instruction based on A.R.S. § 13–202(C) was erroneous under principles of double jeopardy or collateral estoppel.

2. Whether the trial court properly denied defendant's motion for judgment of acquittal.

## FACTS AND PROCEDURAL BACKGROUND

Defendant and the victim were involved in a verbal altercation outside a Tucson bar. Defendant went back inside the bar, borrowed a knife, returned to the scene, and stabbed the victim. The victim ran a few blocks, collapsed, and died. Defendant was indicted for first degree murder. Throughout three different trials, he has maintained that he acted in self-defense.

An understanding of the procedural background of the case and the various trials that ensued is essential to a consideration of the issues presented. Defendant first went to trial on the first degree murder charge. The trial court instructed the jury on first degree murder, second degree murder, manslaughter, and negligent homicide. The jury returned a guilty verdict on the second degree murder charge. No judgment was ever entered on the verdict, however, because the trial court, at defendant's request, granted defendant a new trial based on juror misconduct.

At the second trial, the trial court instructed the jury on second degree murder, manslaughter, and negligent homicide. The jury returned a guilty verdict on the negligent homicide charge, and expressly found defendant not guilty of the higher charges of second degree murder and manslaughter. Again, no judgment was entered because the trial court, at defendant's request, granted defendant a new trial based on juror misconduct.

At his third trial, defendant was tried only on the negligent homicide charge. The trial court, after denying defendant's motion for acquittal, gave the following jury instruction:

> If acting negligently suffices to establish an element of the offense, that element is established if a person acts intentionally, knowingly or recklessly.

This instruction was based on A.R.S. § 13–202(C), which provides:

> If a statute provides that criminal negligence suffices to establish an element of an offense, that element also is established if a person acts intentionally, knowingly or recklessly.

The jury found defendant guilty of negligent homicide. This time the trial court entered judgment on the verdict and sentenced defendant accordingly. Defendant appealed.

The court of appeals reversed the conviction and remanded for a new trial, stating:

> The issue here is: could the trial court properly instruct the jury based on our

---

1. A *Willits* instruction is sometimes appropriate when the state fails to preserve exculpatory evidence to defendant's prejudice. *State v. Willits,* 96 Ariz. 184, 393 P.2d 274 (1964).

statute, A.R.S. § 13–202(C), which allows the state to show negligence by showing some higher mental state, after the appellant was acquitted in a former trial of acting with those culpable mental states? We agree with appellant that it could not. Because appellant was acquitted of second-degree murder and manslaughter in his second trial, the jury in his third trial could only determine whether or not he was guilty of negligent homicide. Because of the previous acquittals, the only state of mind the jury could consider was negligence.

*State v. Nunez,* 163 Ariz. 452, 454, 788 P.2d 1203, 1205 (App.1989).

The precise legal basis of the court of appeals' reversal is unclear to us. The court says the defendant argued that the jury instruction "violated his rights against double jeopardy and the rules of collateral estoppel and res judicata." *Nunez,* 163 Ariz. at 454, 788 P.2d at 1205. The opinion also states that the challenged jury instruction is erroneous, but does not specify a legal basis for this statement. The opinion also states that the prosecutor's arguments based on the jury instruction violated "appellant's double jeopardy rights." *Id.* The discussion of both the instruction and the prosecutor's argument appears in a section of the opinion entitled "DOUBLE JEOPARDY AND COLLATERAL ESTOPPEL." That section cites only two cases, both based on collateral estoppel. *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *State v. Superior Court,* 150 Ariz. 18, 721 P.2d 676 (Ct.App. 1986).

Having concluded that the jury instruction was erroneous, the court of appeals concluded that the prosecutor's argument based on the instruction was likewise erroneous. Finally, although defendant challenged the denial of his motion for acquittal, the court of appeals did not address that issue.

**2.** The Arizona Constitution also provides double jeopardy protection. Ariz. Const. art. 2, § 10. The defendant makes no separate argument

## DISCUSSION

### I. Jury Instruction

It is helpful to state with some precision what the respective positions of the parties are and what they are not. Defendant does *not* contend that the state is barred from trying and convicting him of negligent homicide. The state does *not* contend that it could properly try or convict defendant of first degree murder, second degree murder, or manslaughter. The state readily acknowledges that defendant has been expressly or impliedly acquitted of each of those charges in one of the two previous trials.

Defendant *does* contend, however, that the prior proceedings have effectively "acquitted" him of acting intentionally, knowingly, or recklessly. Therefore, defendant argues that the challenged jury instruction was improper because it permitted the jury to use evidence to find that he acted negligently when that same evidence could also show that he acted intentionally, knowingly, or recklessly. Although not expressly urged, it seems to us to follow that acceptance of defendant's argument would require exclusion at retrial of all evidence that defendant acted intentionally, knowingly, or recklessly. The state, on the other hand, contends that neither double jeopardy nor collateral estoppel bars the jury instruction or the argument based on it. The doctrines of double jeopardy and collateral estoppel, although related, are separate, and we deal with them separately.

### A. Double Jeopardy

The double jeopardy clause of the fifth amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This constitutional guarantee applies to the states through the fourteenth amendment. *Benton v. Maryland,* 395 U.S. 784, 793–94, 89 S.Ct. 2056, 2061–62, 23 L.Ed.2d 707 (1969).[2]

based on the state constitutional provision; therefore, we do not separately discuss it.

■ The United States Supreme Court has held that the guarantee against double jeopardy protects against three situations: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Grady v. Corbin*, —— U.S. ——, ——, 110 S.Ct. 2084, 2090, 109 L.Ed.2d 548 (1990); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). This case does not fall neatly into any of these three categories.

First, this case is not a "second prosecution," but a retrial in one prosecution, the retrial having been granted at defendant's request. Second, defendant has been neither convicted nor acquitted of the offense of negligent homicide in any previous prosecution. Third, no question of multiple punishment is presented. Although this case does not fall within any of the three categories of the classic statement of the double jeopardy rule, this does not end our inquiry.

In determining whether two offenses constitute the "same offense" for purposes of the multiple punishment prohibition of double jeopardy, courts apply the test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In *Blockburger*, the Court considered whether several offenses charged in a single prosecution were sufficiently different to permit multiple sentences without violating the double jeopardy clause. *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182. The Court compared the elements of the offenses and fashioned the following test:

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.

*Id.* Later, the Court extended the *Blockburger* test to successive prosecution cases in *Brown v. Ohio*, 431 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

The Court has recently stated, however, that the *Blockburger* test is not the exclusive method for determining whether successive prosecutions involve the "same offense" in violation of the double jeopardy rule:

> [A] subsequent prosecution must do more than merely survive the *Blockburger* test. As we suggested in [*Illinois v.*] *Vitale*, [447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980) ], the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.

*Grady v. Corbin*, —— U.S. ——, ——, 110 S.Ct. 2084, 2093, 109 L.Ed.2d 548 (1990) (footnote omitted).

The Court in *Grady* was concerned that successive prosecutions allow the state to "make repeated attempts to convict an individual subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity." *Id.* at ——, 110 S.Ct. at 2091 (quoting *Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957)).

■ As we have previously noted, defendant does not contend that his retrial for negligent homicide, which he requested, is barred. Rather, he argues that:

> [T]he issue to be decided is *whether* the protection of the fifth amendment *double jeopardy right prevents the state from* prosecuting the defendant for a negligent act (negligent homicide) by *arguing that the appellant committed the act in a knowing or intentional fashion,* even though he had been acquitted of those mental states in his previous trials. (emphasis added).

We do not believe that either *Blockburger* or *Grady* supports defendant's argument. *Blockburger* precludes the state from prosecuting the defendant for different offenses that are really the "same offense," subjecting the defendant to multiple punishments. Here, defendant is subject to prosecution, conviction, and sentencing for *one* offense—negligent homicide—and does not face multiple punishments. We find

*Blockburger* inapplicable to the facts of this case.

*Grady* modifies *Blockburger* and precludes the state from proving conduct in a subsequent prosecution that constitutes an offense for which the defendant has already been prosecuted. *Grady*, ____ U.S. at ____, 110 S.Ct. at 2092–94.[3] We believe *Grady* is likewise inapplicable here because this case involves a *single prosecution* retried twice at defendant's request based on juror misconduct. *Grady* involved the reuse of facts that had already been used in earlier prosecutions to convict and punish the defendant. We believe the modified *Blockburger* test as announced in *Grady* is limited to cases involving successive prosecutions. We therefore find defendant's argument unpersuasive under the double jeopardy principles announced in *Blockburger* and *Grady*. Because defendant's argument seeks to preclude the use of *facts*, rather than the prosecution itself, it is more appropriately addressed in the context of the doctrine of collateral estoppel, to which we now turn.

### B. Collateral Estoppel

Collateral estoppel is an ingredient of the fifth amendment protection against double jeopardy. *Ashe*, 397 U.S. at 446, 90 S.Ct. at 1195. The court in *Ashe* stated:

> "Collateral estoppel.... means simply that when a[n] issue of ultimate fact has once been determined by *a valid and final judgment*, that issue cannot again be litigated between the same parties in any *future lawsuit*.

397 U.S. at 443, 90 S.Ct. at 1194 (emphasis added); *see also Harris v. Washington*, 404 U.S. 55, 56–57, 92 S.Ct. 183, 184, 30 L.Ed.2d 212 (1971) (ultimate issue of identity decided by jury in first trial, therefore, collateral estoppel protects against relitigation).

In *Ashe*, three or four men (the number of robbers was disputed) broke in on a poker game and robbed six players. Each of four defendants was charged with seven separate offenses—the armed robbery of each of the six players and the theft of a car. Ashe went to trial on the charge of robbing one of the players. The evidence identifying Ashe as one of the robbers was weak and the jury found him not guilty. Six weeks later, Ashe was brought to trial on a charge of robbing one of the other players.

To determine the applicability of collateral estoppel, the Court in *Ashe* stated that a court should:

> "[E]xamine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings."

397 U.S. at 444, 90 S.Ct. at 1194 (citation omitted).

After reviewing the record, the Court concluded that the first jury could only have determined that Ashe was not one of the robbers. The Court stated that the question then was "simply whether, after a jury determined by its verdict that the petitioner was not one of the robbers, the State could constitutionally hale him before a new jury to litigate that issue again." *Id.* at 446, 90 S.Ct. at 1195. The Court concluded that the doctrine of collateral estoppel barred relitigation of the *issue* of identification at the second prosecution. *Id.*

The differences between this case and *Ashe* are substantial. In *Ashe*, a previous jury had found the defendant not guilty of the very robbery for which he was being retried. The second prosecution in *Ashe* was at the government's request after it had already lost its case. Here, no jury has previously acquitted the defendant of the offense for which he is being tried— negligent homicide. Additionally, the retrial is not a new or second prosecution,

---

3. *See also Taylor v. Sherrill*, 166 Ariz. 359, 802 P.2d 1058 (App.1990) (review granted by this court on January 15, 1991), and *Lewis v. War-* *ner*, 166 Ariz. 354, 802 P.2d 1053 (App.1990), both applying *Grady*.

but a retrial at defendant's request after two previous juries found him guilty.

A review of the earlier proceedings, as suggested by *Ashe*, does not lead to the conclusion that any previous jury found defendant not guilty of negligent homicide. The first jury found defendant guilty of second degree murder. The trial court then granted a new trial at defendant's request based on juror misconduct, which included consulting a dictionary concerning the various mental states at issue. The second jury found defendant guilty of negligent homicide. The trial court again granted a new trial at defendant's request because a juror, concerned about the implications of a hung jury, utilized a hornbook to try to learn about double jeopardy and retrials. The record does not indicate that the earlier juries acted solely because of a finding that defendant did not act intentionally, knowingly, or recklessly. In fact, from this record of repeated juror misconduct, we could more easily conclude that the previous juries were confused about the various mental states.

The United States Supreme Court's recent decision in *Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), buttresses our view that *Ashe* does not require reversal here. In *Dowling*, a prosecution for bank robbery, the prosecution introduced evidence of the defendant's alleged participation in a separate attempted armed burglary, even though the defendant had previously been acquitted on all charges stemming from that separate incident. The defendant challenged the use of the evidence on both double jeopardy and due process grounds. The Court, however, rejected defendant's arguments, stating:

[W]e decline to extend *Ashe v. Swenson* and the collateral estoppel component of the Double Jeopardy Clause to exclude in all circumstances, as *Dowling* would have it, relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted.

493 U.S. at ——, 110 S.Ct. at 672. If use of the challenged testimony in *Dowling* is permissible, we fail to see how defendant's rights in this case have been violated under collateral estoppel principles.

As we have noted, defendant does not rely on the double jeopardy provision of the Arizona Constitution. He does, however, urge upon us Arizona cases dealing with collateral estoppel. We turn, therefore, to those cases.

Arizona adopted the doctrine of collateral estoppel in criminal cases prior to the Supreme Court's pronouncement in *Ashe*. In *State v. Little*, 87 Ariz. 295, 304, 350 P.2d 756, 765 (1960), this court held that an earlier *judgment* in a criminal case was conclusive as to all issues actually litigated and adjudicated. The court of appeals applied similar reasoning in *State v. Forteson*, 8 Ariz.App. 468, 472–73, 447 P.2d 560, 564–65 (1968), and held that an earlier *judgment* of acquittal was binding in a later prosecution if common factual issues were actually adjudicated in the prior proceeding. In doing so, the court of appeals noted that, "... if there is any basis of explanation of the prior acquittal other than adjudication on a factual issue which is critical to the second prosecution, the doctrine of collateral estoppel should be rejected." *Id.* at 473, 447 P.2d at 565.

As we have previously noted, the prior proceedings here do not provide the factual predicate to apply the doctrine of collateral estoppel. The doctrine is also inapplicable because the previous proceedings did not result in a final judgment. In *State v. Williams*, 131 Ariz. 211, 639 P.2d 1036 (1982), we held that the denial of a petition to revoke probation, based on the state's failure to establish a probation violation, did not collaterally estop the state from prosecuting the defendant for sexual assault, even though the sexual assault was the basis for the probation revocation petition. In so holding, we stated:

Collateral estoppel attaches only to a judgment.

"There is, of course, a fundamental difference between a verdict and a judgment, the one being the jury's

finding on the facts; and the other, the Judge's determination of the case upon the verdict. A verdict, before judgment has been entered thereon, has no finality, cannot be executed and cannot be pleaded in bar as *res judicata* or offered in evidence as collateral estoppel." (citations omitted) (emphasis in original).

The force of the estoppel is the judgment itself. It is not the finding of a court but, rather, the judgment entered thereon which [precludes] the parties.

*Id.* at 213, 639 P.2d at 1039.

Because defendant's first two trials did not result in any judgment, let alone a final judgment, collateral estoppel is inapplicable. *See Ashe*, 397 U.S. at 443, 90 S.Ct. at 1194; *Williams*, 131 Ariz. at 213, 639 P.2d at 1039.

Rule 26.1, Ariz.R.Crim.P., 17 A.R.S. defines a judgment as:

[T]he *adjudication of the court based upon the verdict of the jury,* upon the plea of the defendant, or upon its own finding following a non-jury trial, that the defendant is guilty or not guilty. (emphasis added).

Here, the trial court ordered new trials after each of the first two verdicts. The trial court never entered judgment on the first two verdicts. Accordingly, collateral estoppel does not apply.

Having rejected defendant's double jeopardy and collateral estoppel arguments, we now consider defendant's motion for acquittal.

## II. Sufficiency of Evidence

The trial court denied defendant's motion for judgment of acquittal made at the close of the state's case and renewed at the close of all the evidence. Defendant now challenges these rulings. Although the court of appeals ordered a new trial, it failed to rule on the validity of these motions.

■ Despite the court of appeals' finding that the trial court committed error in instructing the jury, the issue of the sufficiency of the evidence remained in the case. The court of appeals should have examined the issue because, if the motion was well taken, no new trial was necessary. In the interest of judicial economy, we have reviewed the sufficiency of the evidence rather than remanding the unresolved issue to the court of appeals.

In making the motion for acquittal at the close of the state's case, defendant argued that "the only evidence that [the jury] can actually evaluate at this point in time regarding the crime is the knife. Everything else is circumstantial and speculative and has no substance to the elements of the crime." We disagree.

The elements of negligent homicide are found in A.R.S. § 13–1102(A), which provides in part: "A person commits negligent homicide if with criminal negligence such person causes the death of another person." Criminal negligence occurs when:

[A] person fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

A.R.S. § 13–105(6)(d). As stated previously in our discussion of double jeopardy and collateral estoppel, criminal negligence may also be established if a person acts intentionally, knowingly, or recklessly. A.R.S. § 13–202(C).

■ A judgment of acquittal is appropriate when "no substantial evidence [exists] to warrant a conviction." *State v. Clabourne*, 142 Ariz. 335, 345, 690 P.2d 54, 64 (1984); Rule 20, Ariz.R.Crim.P., 17 A.R.S. Substantial evidence is more than a mere scintilla and is such proof that "reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Jones*, 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980); *see also State v. Edwards*, 136 Ariz. 177, 186, 665 P.2d 59, 68 (1983). In reviewing the denial of a Rule 20 motion for acquittal, the appellate court views the evidence in favor of upholding the jury's verdict. *State v. Gillies*, 135 Ariz. 500, 506, 662 P.2d 1007, 1013 (1983).

■ A defendant who goes forward and presents a case waives any error if his case supplies evidence missing in the state's case. *See State v. Savoy*, 109 Ariz. 531, 532, 514 P.2d 452, 453 (1973). Thus, we evaluate the motion based on the entire record, including any evidence defendant supplied.

■ Defendant admitted that he stabbed the victim. He testified that the victim had provoked him outside the bar, demanded money, made offensive remarks, and kicked his dog. Defendant said the victim displayed a knife. Defendant returned to the bar and borrowed a knife from the bartender. He removed the knife from its sheath, walked outside the bar, and told the victim that "now I have something to defend myself also." Defendant stated that the "knife that I had put towards the front [of the victim] was buried in his chest." Defendant replaced the knife in its sheath, returned the knife to the bartender, and left the scene. Much evidence, and the inferences therefrom, conflicted with defendant's version of the altercation. None of the other witnesses corroborated defendant's assertion that the victim demanded money, kicked defendant's dog, or possessed a knife. No knife other than the one defendant used was ever found.

Without unduly prolonging this opinion, it is sufficient to say that, based upon our review of the entire record, we find that sufficient evidence exists to withstand defendant's motion for acquittal.

## DISPOSITION

The trial court's jury instruction did not violate defendant's rights under the doctrines of double jeopardy or collateral estoppel. Sufficient evidence was presented to withstand defendant's motion for acquittal. The court of appeals' opinion is vacated in part and defendant's conviction and sentence are affirmed.

GORDON, C.J., and CAMERON and CORCORAN, JJ., concur.

FELDMAN, Vice Chief Justice, dissenting.

Nunez has been tried twice. In each trial, he admitted striking the blow, admitted causation, and claimed justification. The verdicts have finally found him guilty only of negligent homicide and not the more serious charges of first degree murder, second degree murder, and manslaughter. The jury was instructed on each of these charges and found Nunez guilty of only the lesser included offense of negligent homicide. The effect of these verdicts is to work an implied acquittal of each of the greater charges. *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); *State v. Maloney*, 105 Ariz. 348, 464 P.2d 793 (1970).

Nunez having thus been acquitted of murder and manslaughter, all agree that the double jeopardy clause prohibits the state from retrying him on those charges. At 863. The question before us is whether, on retrial for negligent homicide, Nunez may be found guilty on the basis that he committed negligent homicide with the more culpable mental states required for murder or manslaughter, the very crimes of which he has been acquitted.

Because Nunez admitted striking the fatal blow and defended only on the grounds of justification, the verdict of negligent homicide and resultant acquittal of murder and manslaughter necessarily mean the following:

1. The jury found that Nunez acted without justification.
2. The jury found Nunez's blow caused the death.
3. The jury found that Nunez did not act with the culpable mental states required by law for murder or manslaughter; thus, Nunez did not act intentionally, knowingly, or recklessly when he killed the victim. *See* A.R.S. §§ 13–1103, 13–1104, and 13–1105.

Under the facts of this case, there is no other legal explanation for the verdicts. The state concedes there is none (Appellee's Answering Brief at 8); the majority advances none; the facts permit no other hypothesis.

We may speculate on everything from confusion to compromise to explain the juries' verdicts. While the true explanation may be compromise, there is "clear case law that the possibility that the jury acquitted out of a desire to compromise ... is not a basis for refusing to apply" the doctrines of collateral estoppel and double jeopardy. *United States v. Mespoulede,* 597 F.2d 329, 333 n. 7 (2d Cir.1979).

That, however, is exactly the conclusion reached by the majority. The court concludes, in effect, that though the juries in the first two trials must have found that Nunez did not act intentionally, knowingly, or recklessly, he may be prosecuted for a lesser included offense on the theory that he acted intentionally, knowingly, recklessly, or negligently. Indeed, the state concedes "that the conviction for negligent homicide, in his second trial, necessarily acquitted him of the mental states of knowing, intentional, or reckless behavior." Appellee's Answering Brief at 8. In my view, once the juries determined that Nunez did not act with the first three culpable states, on retrial for negligent homicide, Nunez may be convicted only on proof of the specific culpable mental state for that crime. This result is required by the principle of collateral estoppel.

It is true, as the majority points out (At 867), that no final judgment was entered. But double jeopardy applies when the verdict is returned, even though no final judgment has been entered. *Green,* 355 U.S. at 188, 78 S.Ct. at 224. If the law were otherwise, the state could prosecute over and over, despite adverse verdicts, so long as it or the court found some way to delay the entry of judgment. This has never been the law. *Id.; Ball v. United States,* 163 U.S. 662, 671, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896).

The same rule applies to collateral estoppel, which, as the majority acknowledges, is subsumed under the doctrine of double jeopardy. At 865; *Ashe v. Swenson,* 397 U.S. 436, 446, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970). Judge Friendly's succinct statement of the relationship of these principles applies directly to this case:

[T]o permit the government to force a defendant who has won an acquittal to relitigate the identical question on a further charge arising out of the same course of conduct, selected by the Government from the extensive catalog of crimes furnished it in the Criminal Code, would permit the very abuses that led English judges to develop the rule against double jeopardy long before it was enshrined in the Fifth Amendment.... *The very nub of collateral estoppel is to extend res judicata beyond those cases where the prior judgment is a complete bar.* The Government is free, within the limits set by the Fifth Amendment, to charge an acquitted defendant with other crimes claimed to arise from the same or related conduct; but it may not prove the new charge by asserting facts necessarily determined against it on the first trial, no matter how unreasonable the Government may consider that determination to be.

*United States v. Kramer,* 289 F.2d 909, 916 (2d Cir.1961) (citations omitted, emphasis added).

Thus collateral estoppel is invoked in criminal cases on a verdict of acquittal, despite the lack of final judgment. *U.S. v. Venable,* 585 F.2d 71, 77–77 (1978); Mayers and Yarbrough, *Bis Vexari: New Trials and Successive Prosecutions,* 74 HARV.L. REV. 1, 3 at n. 10 (1960). "At least since *Sealfon v. United States,* 332 U.S. 575, 68 S.Ct. 237 [92 L.Ed. 180] (1948), it has been the rule in the federal courts that the doctrine of res judicata applies to criminal as well as civil proceedings and operates to preclude both those matters in issue which the *verdict* determined, though the offenses be different." *Wingate v. Wainwright,* 464 F.2d 209, 211 (5th Cir.1972) (emphasis added). Indeed, "with virtual unanimity, the cases have applied collateral estoppel to bar the government from relitigating a question of fact that was determined in defendant's favor by a *partial verdict.*" *Mespoulede,* 597 F.2d at 336 (emphasis added).

Because the jury found that Nunez did not kill intentionally, knowingly, or reck-

lessly, Nunez cannot be convicted of a lesser crime on the theory he killed the same victim while acting intentionally, knowingly, or recklessly. I dissent from the contrary conclusion reached by the majority.